No. 90-396

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

BARBARA J. MARTIN,

    Plaintiff and Appellant,

-vs-

SPECIAL RESOURCE MANAGEMENT, INC.,
ENTECH, INC., and THE MONTANA POWER COMPANY,

    Defendants and Respondents.

APPEAL FROM:    District Court of the Second Judicial District,
    In and for the County of Silver Bow,
    The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stephen C. Pohl, Bozeman, Montana
        Charles P. Bowen, Bozeman, Montana

    For Respondents:

        Patrick T. Fleming and Robert T. O'Leary, The
        Montana Power Company, Butte, Montana

Submitted:  November 11, 1990

Decided:  December 31, 1990

FILED
90 DEC 31 AM 10 46
ED SMITH, CLERK
MONTANA SUPREME COURT
Filed:

Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Barbara J. Martin appeals the decision of the District Court, Second Judicial District, Silver Bow County, granting partial summary judgment to Special Resource Management, Inc., Entech, Inc. and the Montana Power Company. We reverse the District Court.

The sole issue for review is whether the District Court erred in dismissing Martin's claim for breach of the implied covenant of good faith and fair dealing, ruling her claim exempted under the Montana Wrongful Discharge From Employment Act.

Martin was hired by the Montana Power Company, as a clerk/typist in 1976. In May, 1986, she applied for and received a job as a secretary with Special Resource Management, Inc., a wholly-owned subsidiary of Entech, Inc., which is in turn owned by MPC.

On June 16, 1987, SRM's new president, Jim Murphy, informed Martin by letter that her position was to be terminated as of July 17, 1987, due to a general reduction in force. After receiving notice, Martin became aware that her position had not been eliminated, but was to be filled by Murphy's personal secretary from his former job with Western Energy Company, a subsidiary of Entech, Inc., with a reshuffling of remaining SRM employees to assume other responsibilities.

Martin instituted suit on June 28, 1988, alleging: Count I, wrongful discharge; Count II, breach of the implied covenant of good faith and fair dealing; and Count III, negligence. SRM thereafter moved for partial summary judgment on Counts II and III,

which the court granted. The court ruled that the newly-enacted Wrongful Discharge From Employment Act, which became effective July 1, 1987, preempted Counts II and III, as Martin's claim had not fully accrued until the date of her termination, July 17, 1987. From that decision Martin appeals.

It should be noted that Martin does not contest the dismissal of Count III in light of this Court's decision in Heltborg v. Modern Machinery (1990), ___ Mont. ____, 795 P.2d 954, which holds no duty exists in employers to use reasonable care in decisions to discharge based upon a theory of negligence.

Martin takes issue with the District Court's finding that a claim for wrongful discharge "cannot arise until such time as the employer-employee relationship has ceased to exist." By that finding, the court concluded that Martin had no cause of action upon notice of termination on June 16, 1987. The court found that Martin's cause accrued on July 17, her termination date, and was therefore subject to the newly-enacted Montana Wrongful Discharge From Employment Act (§ 39-2-901, et seq., MCA (effective July 1, 1987), which exempts claims under a breach of implied covenant of good faith and fair dealing theory.

The issue for review thus becomes: At what point did an actionable cause for termination arise in this case--upon notice of the termination or when the termination became effective?

Montana case law is slim, as the issue has been addressed peripherally at best. Martin asserts the recent case of Kitchen Krafters v. Eastside Bank (1990), ____ Mont. ___, 789 P.2d 567, is

3

determinative of the issue. Martin cites the premise that "it has long been recognized that the statute of limitations runs from the time of breach and not from the time of injury" as controlling. Martin states that a cause of action likewise begins at time of breach, and that the breach in the instant case occurred upon receipt of the notice of termination. Martin argues that all decisions made leading to her discharge occurred prior to notification on June 16, 1987, and that it was that decision that constituted the wrongful conduct of SRM.

SRM, et al. counter that two recent Montana cases, Finstad v. Montana Power Co. (1990), 241 Mont. 10, 785 P.2d 1372, and Frigon v. Morrison-Maierle (1988), 233 Mont. 113, 760 P.2d 57, are controlling in this case. However, a review of those cases reveals only that breach of the covenant of good faith and fair dealing is applicable only where an employee termination exists. In both Finstad and Frigon, this Court determined that no actionable cause existed for such a breach as the employees had voluntarily resigned. No express or constructive discharge was found in either case. The issue of when an action accrues was never touched upon.

We look, therefore, to cases from other jurisdictions to resolve the issue.

In an Illinois decision, Aetna Life and Casualty Co. v. Sal E. Lobianco & Son Co., Inc. (Ill. App. 1976), 357 N.E.2d 621, cited in Kitchen Krafters, supra, the court stated:

> A plaintiff's cause of action in tort ordinarily accrues
> at the time his interest is invaded--where the
> defendant's alleged breach of duty causes the plaintiff
> to suffer pain the invasion of his interest is manifest

4

as soon as it occurs and he has a ripe cause of action then--and the mere fact the extent of his damage is not immediately manifest does not postpone the accrual of the action. (Citing cases.) Thus, the rule was early established in Illinois that where the negligent act results in personal injury, the action accrues on the day of the injury. (Citing case.)

However, a different rule evolved for actions in tort which arose from contractual obligations. In torts arising from contract the statute of limitations has been held to begin to run at the time of the breach of duty constituting the tort and not when damages ensue.

357 N.E.2d at 623.

In Johnston v. Farmers Alliance Mutual Insurance Co. (Kan. 1976), 545 P.2d 312, the Court stated:

According to plaintiff's deposition he was called into Mr. Skupa's office on March 3, 1972, and terminated. Although plaintiff drew his pay by check until May 31, 1972, he did not work for and was not associated with Alliance after March 3, and was in fact employed by another company on May 26, 1972. By his own testimony plaintiff knew he was being terminated by Alliance on March 3, 1972. He further admitted that all of the alleged acts of Mr. Skupa occurred prior to that date. Obviously, substantial damages for mental suffering and damage to reputation were caused and began to accrue upon plaintiff's receipt of notice that he was being terminated. Any punitive or exemplary damages would have accrued upon notice of termination and would have been recoverable during this extended leave of absence. The acts causing plaintiff's injury occurred on or before March 3, 1972, and any cause of action plaintiff had against Alliance or Skupa could have been brought after that date.

Concerning the accrual of a cause of action, we held in Yeager v. National Cooperative Refinery Ass'n, 205 Kan. 504, 470 P.2d 797:

"In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises, the true test being at what point in time the plaintiff could first have filed and prosecuted his action to a successful conclusion."

5

Although some damages to the plaintiff may not have accrued under the accounting principles until installments of salary had ceased, plaintiff sustained substantial injury upon receipt of official notice of termination on March 3, 1972, and his cause of action accrued on that date.

545 P.2d at 316-317.

Although Johnston's factual scenario is not "nearly identical" with the instant case as Martin urges, it carries persuasive weight. So, too, do the federal cases cited by Martin, although they are primarily based upon employment discrimination claims barred by statutes of limitation. In Delaware State College v. Ricks (1980), 449 U.S. 250, the United States Supreme Court stated that "the only alleged discrimination occurred--and the filing limitations periods therefore commenced--at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure--the eventual loss of a teaching position--did not occur until later." 449 U.S. at 258. The court added that the proper focus, for statute of limitations purposes, was when the act occurred, not when the final consequences came about. The court reaffirmed the Ricks decision in Chardon v. Fernandez (1981), 454 U.S. 6, where it held:

We think Ricks is indistinguishable. When Ricks was denied tenure, he was given a one-year "terminal" contract. Thus, in each case, the operative decision was made--and notice given--in advance of a designated date on which employment terminated.

454 U.S. at 8.

We will not list the multitude of similar cases advanced by Martin. It is sufficient to say their holdings are similar to Ricks and Chardon.

6

We concur with Martin that her cause of action accrued upon notice of her termination. All the elements needed for a claim of breach of the implied covenant of good faith and fair dealing, if present at all, were present then. It is from the decision to terminate itself which Martin seeks redress. Her cause is analogous to being pushed from a precipice--the assailant cannot contend he is not culpable until the victim impacts with the ground. It was the decision and the act thereupon which caused the end result, and it is at that point where legal redress may first be sought. We find that Martin's claim for breach of the implied covenant of good faith and fair dealing accrued upon her receiving notice of termination. Accordingly, we reverse and remand the cause to the District Court.

_____
John L. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7