**Sandra M. POOLE, Appellant,**

v.

**Allen LOWE, Appellee.**

**No. 91–CV–1158.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1992.
Decided Nov. 3, 1992.

---

Robert A. Ackerman, Washington, D.C., for appellant.

Karl N. Marshall, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and FARRELL and KING, Associate Judges.

FARRELL, Associate Judge:

In this suit alleging legal malpractice, the trial judge granted summary judgment in favor of appellee Allen Lowe on the ground that the complaint was filed several days after the three-year statute of limitations had expired. We conclude that the suit, when measured from the time appellant Sandra M. Poole suffered actual injury as a result of the alleged malpractice, was timely filed, and we therefore reverse and remand for consideration of the remaining grounds advanced by Lowe in support of summary judgment.

## I.

It is undisputed that Ms. Poole retained Mr. Lowe's law firm in 1985 to represent her in pursuing a workers' compensation claim under the Longshore and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 901 *et seq.* (1988). Lowe assumed responsibility for the case the following year. After an informal conference with a deputy commissioner of the United States Department of Labor, as provided in the Act, a formal hearing was set for February 1987 before an administrative law judge. Poole met with Lowe in Lowe's office on February 17, 1987, and signed a settlement document he had prepared for submission to the employer's insurer, proposing a final settlement that included a $40,000 lump sum payment and provision for future medical payments. At this point the parties' account of the facts diverges. In her sworn affidavit opposing summary judgment, Poole alleged that Lowe told her the document was not a binding agreement but was to be sent to the employer's insurer, who would likely make some changes, and that her signature on it was necessary just "to get the procedure started." According to Poole, Lowe told her he would sit down and go over any such changes with her when he got the document back. She told him she wanted to see any changes before the document "was process[ed] for final approval."

Under the Act, the deputy commissioner or administrative law judge is required to approve a settlement application submitted by the parties within thirty days of submission "unless it is found to be inadequate or procured by duress." 33 U.S.C. § 908(i)(1) (1988); 20 C.F.R. § 702.243(b) (1992) ("The adjudicator shall consider the settlement application within thirty days and either approve or disapprove the application"). Accordingly, upon Lowe's representation that the parties had agreed to a settlement,

on February 27, 1987, the administrative law judge remanded the matter to the deputy commissioner "for implementation of the negotiated agreement or such other disposition as may be warranted." On or about March 20, 1987, according to Poole's affidavit, Lowe telephoned her that the insurance company attorneys had returned the settlement document approving the $40,000 lump sum payment and medical payment provisions and making only changes "which were ... unimportant." Poole told Lowe she wished to see the changes, and did not authorize him to sign her name to the document received from the insurer.[1] A few days later, however, Poole received a letter from Lowe dated March 23, 1987, transmitting portions of the settlement document and stating: "As per our previous discussion, as this will in no way affect the settlement amount, your medical rights or your understanding of the agreement, we have fixed your name to said document and forwarded it on for approval." The application for approval of the agreement was sent to the deputy commissioner on March 24.

According to Poole, however, as soon as she received the March 23 letter, she telephoned Lowe and asked him who had signed her name, and was told his secretary had. She told Lowe that she had not authorized anyone to sign her name, "that the signature was a forgery, that this was not the settlement [she] agreed to, and that [she] was not happy with this settlement." Lowe responded "in stiff and hostile terms" that "there was nothing [she] could do to prevent the settlement reflected in that document from taking effect since it had already been accepted by the Deputy Commissioner."[2] In fact, as the parties agree, it was on April 1, 1987, that the deputy commissioner issued findings of fact and an order which approved the settlement as "adequate and not procured by duress," and as "effect[ing] a final disposition of the claim ... [and] discharging the liability of the employer and insurance carrier for such compensation and/or future medical benefits as agreed upon." By letter of April 15, 1987, Lowe sent Poole the settlement check of $34,000, representing the lump sum amount less his contingent legal fee.

Poole sued Lowe in Superior Court on April 2, 1990,[3] alleging that he had negligently represented her in the informal proceeding before the deputy commissioner and had fraudulently misrepresented her by purportedly forging her signature without her consent on the settlement document submitted to the Department of Labor.[4] In granting summary judgment for Lowe, the trial judge found that "the essence of the plaintiff's malpractice claim arises out of the alleged settlement agreement and its effects," and on appeal Poole accepts this definition of her claim. In reliance on *Knight v. Furlow*, 553 A.2d 1232 (D.C.1989), the trial judge applied the "discovery" rule under which the statute of limitations began to run when Poole had "knowledge of (or by the exercise of reasonable diligence should have [had] knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Id.* at 1234. The judge found that Poole had "discovered the al-

1. In his affidavit in support of summary judgment, Lowe contended, to the contrary, that in the March 20 conversation, after he discussed the new document with Poole and advised her that none of the changes were material, she instructed him "to affix her name to the document and send her a copy...."

2. In his affidavit, Lowe admitted discussing the case with Poole by telephone on March 27 and 30, 1987, but stated that "[s]he acknowledged receipt of my earlier letter[,] requested [a] copy of portions of the Act and again indicated her willingness to accept the lump sum [payment] of $40,000.00 after a discussion assuring her of her rights to continued medical benefits."

3. Poole was granted leave to amend her complaint on September 21, 1990, but, as the trial judge recognized, a claim or defense asserted in an amended complaint that arose out of the occurrence set forth in the original complaint relates back to the date of the latter. Super.Ct.Civ.R. 15(c).

4. Besides answering the complaint, Lowe filed a counterclaim alleging, among other things, abuse of process and libel, but he dismissed this claim voluntarily on October 16, 1991.

leged legal malpractice on or before March 30, 1987," in that she knew of the alleged forgery of her name and of the "finality" of the settlement agreement "in the month of March." Specifically, by Poole's own admission in her affidavit and deposition, Lowe had told her "a few days after" she received his letter of March 23, 1987, that the deputy commissioner had accepted the agreement and that she could therefore do nothing to prevent it from taking effect. Consequently, to comply with the three-year statute of limitations, the judge concluded that Poole "would have had to have filed her complaint as of March 31, 1990," instead of April 2, 1990, when she in fact filed it.[5]

## II.

The parties agree on appeal that Poole's suit would not be untimely if the limitations period began to run on April 1, 1987, the date on which the deputy commissioner approved the settlement agreement.[6] Lowe argues that, even applying the discovery rule, Poole "had knowledge of the existence of the alleged injury, its cause [in] fact, and evidence of the alleged wrongdoing prior to March 31, 1987." Poole counters that it would distort the purpose of the discovery rule to hold that, because Lowe erroneously told her before the end of March 1987 that the agreement had been accepted, she "knew" of her inju-

ry (as well as the alleged wrongdoing) by then and hence had to file suit before March 31, 1990. We agree with Poole.

As an ameliorative device favoring the right to bring suit, this court applies the discovery rule to negligence actions, including malpractice, "where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury...." *Knight*, 553 A.2d at 1234 (applying rule to legal malpractice claim); *Burns v. Bell*, 409 A.2d 614 (D.C.1979) (medical malpractice). But even in ordinary negligence actions, the rule in this jurisdiction is that "a cause of action accrues for statute of limitations purposes at the time the injury *actually occurs*." *Knight*, 553 A.2d at 1234 (emphasis added).[7] As explained in *Knight*, this means that " '[t]he mere breach of a professional duty, causing only ... the threat of future harm—*not yet realized*—does not suffice to create a cause of action for negligence.' " *Id.* at 1235 (emphasis added) (quoting *Budd v. Nixen*, 6 Cal.3d 195, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436 (1971) (superseded by statute, West's Cal.Civ.Proc.Code § 340.6)). " 'Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.' " *Id.* (quoting *Budd* and *Luick v. Rademacher*, 129 Mich.App. 803, 342 N.W.2d 617, 619 (1983)). Although we established in *Knight* that "[i]t is not nec-

---

**5.** Poole had also sued for intentional infliction of emotional distress. Citing *Saunders v. Nemati*, 580 A.2d 660 (D.C.1990), the trial judge concluded that this claim too was governed by the three-year statute of limitations. Appellant makes no independent challenge to this ruling on appeal.

**6.** The trial judge's ruling is ambiguous. If, as the judge appeared to conclude, the complaint would have been timely if filed on ("as of") March 31, 1990, then there is no statute of limitations issue: March 31, 1990, was a Saturday, and under Super.Ct.Civ.R. 6(a), a complaint filed on Monday, April 2, was timely. *See Banks v. Chesapeake & Potomac Telephone Co.*, 256 U.S.App.D.C. 22, 24, 802 F.2d 1416, 1418 (1986) (citing *People's Counsel v. Public Serv. Comm'n*, 451 A.2d 90, 91 (D.C.1982)). However, the judge also expressly relied on Poole's assertion in her affidavit that the conversation in which Lowe said the settlement was final took

place "a few days after March 23, 1987," and the judge further stated that Poole "exceeded the three-year time limit by *several* days" (emphasis added). These remarks imply that in the judge's view the last day on which Poole could file a timely suit was on Friday, March 30, 1990. Rather than simply assume that the judge was mistaken in thinking that a March 31, 1990 filing was untimely, we shall assume that the judge meant the complaint had to be filed by March 30.

**7.** That is, this jurisdiction has "rejected the 'occurrence rule' and instead adopted the more modern 'damage rule,' holding that the cause of action accrue[s] when the plaintiff-client suffered actual injury." *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 n. 5 (D.C. 1978) (citing *Fort Meyers Seafood Packers, Inc. v. Steptoe & Johnson*, 127 U.S.App.D.C. 93, 381 F.2d 261 (1967), *cert. denied*, 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968)).

essary that all or even the greater part of the damages have to occur before the cause of action arises,' " *id.* (quoting *United States v. Gutterman,* 701 F.2d 104, 106 (9th Cir.1983)) (further citations omitted), there must at least have been injury not dependent upon "a contingent or uncertain event[; for] then the fact of damage [would be] speculative and a cause of action [would] not [have] accrued." R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 18.11, at 107 (3d ed. 1989). *See also* CALVIN W. CORMAN, LIMITATION OF ACTIONS, § 7.4.5 at 560–61 (1991).

We hold as a matter of law that Poole's cause of action accrued no earlier than April 1, 1987, when the deputy commissioner approved the settlement agreement. At that point, in the words of one court, her injury became "objectively verifiable." *Laird v. Blacker,* 235 Cal.App.3d 1795, 279 Cal.Rptr. 700, 712 (1991), *aff'd,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691 (1992). Before that time the injury Poole alleged— that she had been inadequately compensated for her physical injury—was contingent upon the deputy commissioner's determination of the adequacy of the settlement agreement, specifically, upon "whether, considering all of the circumstances, including, where appropriate, the probability of success if the case were formally litigated, the [settlement] amount is adequate." 20 C.F.R. § 702.243(f).[8] Were we to accept Lowe's argument that, assuming Poole's allegations are true, her actual injury dated from his earlier statement to her that nothing could prevent the agreement from taking effect, we would ignore altogether the commissioner's authority to approve or disapprove the agreement.

Lowe asserts that to establish the date of agency approval of the agreement as the date of accrual of the cause of action is "arbitrary" because Poole could have sought administratively and in court to set aside the agreement and then used the conclusion of either proceeding as the date when the harm actually occurred. *Knight v. Furlow,* however, would prevent any such manipulation of the date of injury. In *Knight* the court rejected an argument "that a client sustains no actionable injury until affirmance on appeal of an adverse lower court judgment." 553 A.2d at 1235. The court did so because, whatever the outcome of that appeal might be, the expenses the client had already incurred in the trial court in the form of attorney's fees and costs were "legally cognizable damages for purposes of stating a claim for such malpractice." *Id.* So too, when the deputy commissioner approved the settlement agreement, Poole suffered legally cognizable harm because thereafter the agreement was final and unmodifiable unless she could demonstrate "a change in conditions or . . . a mistake in a determination of fact by the deputy commissioner. . . ." 33 U.S.C. § 922. *See also Wettanen v. Cowper,* 749 P.2d 362, 365 (Alaska 1988) (statute of limitations commenced from entry of judgment against plaintiff by trial court upon accepting settlement which plaintiff did not authorize or have knowledge of, even though new counsel moved to set aside judgment and took subsequent appeal). In holding that Poole suffered no actual injury *before* the deputy commissioner approved the agreement, we merely refuse to allow the limitations period to commence at a time when, despite Lowe's alleged representations of "finality," the critical event in negotiation of the settlement had not transpired.[9]

---

**8.** To permit that determination, Lowe was required to submit to the Deputy Commissioner a settlement application—"a self-sufficient document"—containing *inter alia* a full description of the terms of the settlement, the reason for the settlement and any disputed issues, a current medical report concerning the claimant, and a statement explaining how the settlement amount was considered adequate. 20 C.F.R. § 702.242.

**9.** Lowe asserted at oral argument that appellant has suffered no loss from the alleged malpractice since the amount of the settlement is what she sought and she has never claimed that she was entitled to more. This contention, however, is embraced within the third ground on which Lowe moved for summary judgment, that "[p]laintiff has failed to allege any damage that is causally related to her claim for professional negligence." The trial court did not reach this issue, nor do we.

Since there is no dispute of fact as to when the settlement agreement was approved, and since Poole's suit was concededly filed within three years of April 1, 1987, the action was timely filed as a matter of law. *See Knight v. Furlow*, 553 A.2d at 1233 (summary judgment proper when there are no material facts in issue and it is clear party is entitled to judgment as a matter of law).

*Reversed and Remanded for Further Proceedings.*

**In re J.F.**