Maurice A. STEPHENSON, Appellant,

v.

AMERICAN DENTAL ASSOCIATION, et al., Appellees.

No. 00–CV–1296.

District of Columbia Court of Appeals.

Argued Nov. 7, 2001.

Decided Jan. 17, 2002.

Iris McCollum Green, Washington, DC, for appellant.

Christopher G. Mackaronis, Washington, DC, with whom Laura C. Fentonmiller, was on the brief, for appellees.

Before STEADMAN and WASHINGTON, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Maurice Stephenson appeals from the trial court's grant of summary judgment, ruling that the three-year statute of limitations barred his complaint. D.C.Code § 12–301(8) (2001). Stephenson sued the American Dental Association (ADA) and Drs. Frederick Eichmiller and Rafael Bowen, directors of the ADA Paffenberger Research Center, alleging wrongful termination of his employment. He argues on appeal that the statute of limitations began to run from the actual termination date, not from the date—sixty days earlier—he received notice of the decision to terminate. Stephenson received oral notice of the termination on March 28, 1996, and a confirming memorandum on March 29, 1996. The March 29 memorandum indicated that his last day of employment would be May 28, 1996. Stephenson filed his complaint on May 28, 1999. The trial court concluded that the statute of limitations had run two months earlier on March 29, 1999. We agree and, thus, affirm.

## I.

Stephenson began employment as a Chief Research Scientist at the ADA Paffenberger Research Center in Gaithersburg, Maryland, in July 1994. Stephenson alleges that appellees—using a pretext of poor relations with colleagues and subordinates—terminated his employment because of his unwillingness to participate in the preparation and filing of a false research report to the National Institutes of Health (NIH) in support of ADA grant objectives for the period of May 1995 to May 1996. According to Stephenson, Eichmiller and Marjenhoff orally informed him on March 28, 1996, that his employ-

ment would end sixty days later. The termination was confirmed by memorandum dated and delivered to Stephenson on March 29, 1996.[1] Stephenson filed this action over three years later on May 28, 1999.

Appellees argue that Stephenson had been terminated not only because of persistent difficulties in working collaboratively with colleagues and subordinates but also because of concerns about his technical expertise, as well as about his job application, in which appellees claim to have discovered—after he was on the job—false entries about his previous work experience. In any event, appellees contend that Stephenson's claim is time-barred.

The trial court agreed with appellees, granting their motion for summary judgment on the ground that Stephenson had filed his complaint after the three-year statute of limitations had expired. In this appeal, Stephenson contends that the trial court erred in determining that the statute of limitations began to run no later than March 28 or 29, 1996, the date of notice, not May 28, 1996, the last day of employment.[2]

## II.

■ We conduct *de novo* review of a trial court's grant of summary judgment. *Anderson v. Ford Motor Co.*, 682 A.2d 651, 652 (D.C.1996). "Summary judgment is appropriate only if there are no genuine issues of material fact in dispute and if the moving party is entitled to judgment as a matter of law." *Weishapl v. Sowers*, 771 A.2d 1014, 1020 (D.C.2001) (citations omitted); Super. Ct. Civ. R. 56(c).

■ Stephenson based his claim for wrongful termination on the public policy exception to the "at-will" employment doctrine this court recognized in *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 33 (D.C.1991). In *Adams*, we allowed an at-will employee to sue his employer for a tortious discharge based solely on the employee's refusal to perform an illegal act. *Id.* at 33–34. Stephenson alleges that he was terminated wrongfully because he refused to turn in a falsified research report to the federal government. There is no dispute that his claim, based on public policy, is governed by the three-year statute of limitations set forth in D.C.Code § 12–301(8) (2001).

In concluding that Stephenson's claim was time-barred, the trial court relied on the Supreme Court's decisions in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). In *Ricks*, plaintiff, a college professor, received notice on June 26, 1974, from the President and Board of Trustees of the defendant college denying him tenure. In accordance with its practice, the college offered plaintiff—and he signed—a one-year "ter-

---

1. The March 29, 1996 memorandum said, more specifically, that the ADA was "willing to support you for approximately 60 days, while you seek other employment." The memorandum further stated that written reports and the status of everything Stephenson currently was working on should be delivered to Eichmiller no later than May 28, 1996, sixty days from the date of the memorandum. Thus, it was clear that May 28, 1996, was to be Stephenson's last day at ADA.

2. As an additional ground for appeal, Stephenson argues that the trial court erred in denying his motion for additional discovery under Super. Ct. Civ. R. 56(f). The trial court based its denial on Stephenson's failure to file the required affidavit stating the evidence appellant would obtain from further discovery in support of his opposition to summary judgment. Because we agree with the trial court's ruling that the statute of limitations bars suit, we do not reach the trial court's ruling on appellant's Rule 56(f) motion.

minal contract" expiring June 30, 1975. *Ricks*, 449 U.S. at 253, 101 S.Ct. 498. Plaintiff had received "explicit notice that his employment would end upon [the contract's] expiration." *Id.* at 258, 101 S.Ct. 498. Plaintiff filed a discrimination suit on September 9, 1977, alleging that his denial of tenure had been based impermissibly on his national origin. *Id.* at 254, 101 S.Ct. 498. The Supreme Court held that the statute of limitations began to run on June 26, 1974, when he was notified that his employment would terminate a year later, at the expiration of the "terminal contract." *Id.* at 261–62, 101 S.Ct. 498. In ruling that the applicable three-year statute of limitations barred plaintiff's complaint, filed on September 9, 1977, the Court added: "In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced— at the time the tenure decision was made and communicated to [plaintiff]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later." *Id.* at 258, 101 S.Ct. 498 (emphasis in original).

In *Chardon*, a civil rights action for wrongful termination, the Supreme Court applied the *Ricks* rationale. Before June 18, 1977, all plaintiffs—nontenured administrators in the Puerto Rico Department of Education, *Chardon*, 454 U.S. at 6, 102 S.Ct. 28—received a letter notifying them that their respective appointments would terminate as of specified dates between June 30 and August 8, 1977. *Id.* at 7, 102 S.Ct. 28. On June 19, 1978, after the one-year statute of limitations had expired, at least one of the plaintiffs filed a complaint for wrongful termination. *Id.* The Court concluded that *Ricks*, which concerned a denial of tenure, was "indistinguishable." *Id.* at 8, 102 S.Ct. 28. In applying *Ricks*, the Court further stated:

> In *Ricks*, we held that the proper focus is on the time of the *discriminatory act*,

not the point at which the *consequences* of the act become painful. The fact of termination is not itself an illegal act. In *Ricks*, the alleged illegal act was racial discrimination in the tenure decision. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in *Ricks* or in these cases, of illegal acts subsequent to the date on which decisions to terminate were made. As we noted in *Ricks*, "[mere] continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." In the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which the suit must be filed.

*Id.* at 8, 102 S.Ct. 28 (citations omitted) (emphasis in original).

Other courts in wrongful termination cases have followed *Ricks* and *Chardon*. The United States Court of Appeals for the Ninth Circuit noted that, "Under Title VII ... a cause of action for wrongful termination accrues upon notice, not upon termination of services to the employer." *Daniels v. Fesco Div. of Cities Serv. Co.*, 733 F.2d 622, 623 (9th Cir.1984). The Second Circuit held, in an unlawful discharge case under the Americans with Disabilities Act, that the limitations period begins to run "on the date when the employee receives a definite notice of the termination." *Smith v. United Parcel Serv. of America, Inc.*, 65 F.3d 266, 268 (2d Cir.1995) (internal quotations omitted) (citations omitted). Similarly, the First Circuit has noted, "In employment discrimination cases involving wrongful discharges, the statute of limitations begins

to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal)." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992) (citation omitted). Citing *Ricks* and *Chardon,* the Seventh Circuit noted in an Age Discrimination in Employment Act case that "unequivocal notice of termination is all that is required to start the limitations period running...." *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 288 (7th Cir. 1986). In a racial discrimination and retaliation case brought under Title VII and state law, the Sixth Circuit noted that the statute of limitations "commenced when plaintiff 'received unequivocal oral notice' of the decision to terminate his employment." *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 460 (6th Cir.2001) (quoting *Weber v. Moses,* 938 S.W.2d 387, 388 (Tenn. 1996)).

State courts have followed the *Ricks* and *Chardon* rationale in wrongful discharge claims. In *Weber,* for example, an action under the Tennessee Human Rights Act and for retaliatory discharge, the Supreme Court of Tennessee stated that "under the *Ricks/Chardon* analysis, a discriminatory termination ceases and is complete when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future." *Weber,* 938 S.W.2d at 391–92. In *Walch v. University of Mont.,* 260 Mont. 496, 861 P.2d 179, 183 (1993), a common law wrongful termination case, the Supreme Court of Montana held that plaintiff's claim accrued three years from the date he received notice of termination. The *Walch* court noted: "It is

from the *decision* to terminate itself which [plaintiff] seeks redress. [Plaintiff's] cause is analogous to being pushed from the precipice—the assailant cannot contend he is not culpable until the victim impacts with the ground. It was the decision and the act thereupon. which caused the end result, and it is at that point where legal redress may first be sought." *Id.* at 182 (emphasis in original) (quoting *Martin v. Special Res. Management, Inc.,* 246 Mont. 181, 803 P.2d 1086, 1089 (1990)). In *Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 928 (Tex.1996), the Supreme Court of Texas held that a claim for wrongful termination under the Texas Workers' Compensation Act "accrues when the employee receives unequivocal notice of his or her termination or when a reasonable person should have known of his or her termination." [3]

Stephenson argues that *Ricks* and *Chardon* are inapplicable because the wrongful discharge in this case is based on an *Adams*-type common law tort claim, not on the statutory claims found in those cases and others that have followed them. Stephenson then urges us to hold that his claim did not accrue until the termination date—as he sees it, the date of "actual injury." *See Poole v. Lowe,* 615 A.2d 589, 592 n. 7 (D.C.1992) (noting in negligence case that this jurisdiction follows "damage rule," *i.e.,* when plaintiff suffers actual injury). Thus, according to Stephenson, his actual injury occurred on his last day of employment, May 28, 1996.

We perceive no reason to reject the *Ricks–Chardon* analysis for a case, such as this one, based on a common law wrongful discharge claim. The operative fact is not

---

3. *Contra Stupek v. Wyle Labs. Corp.,* 327 Or. 433, 963 P.2d 678, 682 (1998) (holding that plaintiff's claim for constructive wrongful discharge did not accrue until end of employment relationship); *Romano v. Rockwell Int'l, Inc.,* 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114, 1128 (1996) (holding that, when

employee alleges termination in violation of public policy, statute of limitation accrues at time of dismissal); *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 116 (Colo.1992) (holding that plaintiff's wrongful discharge claim predicated on failure to perform illegal act accrued on last day of employment).

the formal termination date but, rather, is the moment Stephenson learned of definite injury. Here, the alleged wrongful discharge occurred when Stephenson was notified unequivocally of his termination. That was the moment when Stephenson believed his termination was attributable to his failure to perform an illegal act. *See Diamond v. Davis,* 680 A.2d 364, 372 (D.C. 1996) (setting forth ingredients of notice sufficient to trigger statute of limitations as: (1) an injury; (2) its cause in fact; and (3) some evidence of wrongdoing). The fact that his last day of work was to be sixty days after notice of termination does not negate the injury unquestionably experienced at the moment of notice.

Moreover, the *Poole* case Stephenson cites for his position actually supports a conclusion that notice of termination begins the limitations period. There, we noted that the cause of action accrued when the injury became "objectively verifiable." *Id.* at 593. *Poole* accordingly undercuts Stephenson's theory because his injury was "objectively verifiable" on the day he received the termination notice. After the notice, but before the formal termination date, Stephenson experienced a cognizable injury: termination attributable to an allegedly wrongful reason. Because "[t]he fact of termination is not itself an illegal act," *Chardon,* 454 U.S. at 8, 102 S.Ct. 28, Stephenson's contention that the statute of limitations accrues after the notice, at the termination date, is plainly wrong. The injury occurred two months earlier when appellees decided to terminate Stephenson allegedly for refusing to turn in falsified test results.

Stephenson replies that a *Ricks–Chardon* analysis cannot be squared with a scenario in which the employer issues a notice of termination but thereafter decides to withdraw the notice and keep the employee. But that scenario is entirely hypothetical. At the time Stephenson re-

ceived notice, there was nothing to suggest that appellees' decision was tentative or otherwise subject to change by, for example, a pending grievance proceeding— which the Supreme Court in *Ricks* said was not enough to toll the statute of limitations. *See Ricks,* 449 U.S. at 261, 101 S.Ct. 498. Moreover, the possibility of Stephenson's scenario is more remote than the facts in *Ricks.* In *Ricks,* the plaintiff exercised established grievance procedures, which are common in many workplaces. Yet the pendency of the grievance in *Ricks* was not even enough to conclude that the college did not definitively terminate plaintiff. Here, Stephenson's notice of termination cited malevolent factors leading to appellees' decision. It is difficult to imagine that Stephenson's case would be less conclusive as to termination than the plaintiff's in *Ricks.*

There is no genuine dispute that Stephenson received notice of termination, at the latest, on March 29, 1996. Under the reasoning of *Ricks* and *Chardon,* which we adopt, his claim filed on May 28, 1999, was too late to survive the three-year statute of limitations.

*Affirmed.*