No. 92-343

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

BETTY L. TONACK,

     Plaintiff and Respondent,

-v-

MONTANA BANK OF BILLINGS,

     Defendant and Appellant.

FILED

MAY 13 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Jeanne M. Bender, Michael B. Anderson,
          Holland & Hart, Billings, Montana

     For Respondent:

          A. Clifford Edwards, Kevin M. Funyak,
          Edwards Law Firm, Billings, Montana


                    Submitted on Briefs: January 14, 1993

                          Decided: May 13, 1993

Filed:

_____
              Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Montana Bank of Billings appeals from a judgment entered against it in the District Court for the Thirteenth Judicial District, Yellowstone County. The court awarded Betty L. Tonack $111,270 in damages on her claims of wrongful discharge and age discrimination. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

We restate the dispositive issues as:

1. Are certain findings of fact concerning the claim of violation of the Age Discrimination in Employment Act clearly erroneous?

2. Did the District Court incorrectly interpret or misapply the provisions of the Age Discrimination in Employment Act?

3. Did the District Court incorrectly interpret or misapply the provisions of the Wrongful Discharge Act?

Betty Tonack began working for the Montana Bank of Sidney in 1981. When she began working there, Tonack held a teller position. She was promoted to teller supervisor. In October 1988, she took a job with the Montana Bank of Billings, with which the bank in Sidney was affiliated. When she moved to Billings, she became the bank's Financial Services Representative (FSR).

In January of 1990, Tonack's performance as an FSR was evaluated as fully satisfactory; "more toward the excellent side." She was given additional duties and responsibilities as a teller supervisor in addition to her duties as the FSR.

In May 1990, Lynette Kiedrowski became Tonack's new supervisor. In August 1990, after irregularities were discovered in a bank audit, Kiedrowski placed Tonack on a 30-day probation. The irregularities included a theft that had occurred in the travelers check area of the bank. The area in which the theft occurred was not under Tonack's supervision and the theft occurred while Tonack was away on vacation. When she placed Tonack on probation, Kiedrowski also relieved her of all duties other than her FSR duties.

While she was still on probation, Tonack became aware that the bank had ordered calling cards prepared for a newly-hired bank employee, Rhonda Kreamer, which showed Kreamer's job title as FSR. The bank had only one FSR position. Also, Kiedrowski instructed Tonack to cross-train Kreamer to serve as backup FSR.

During the week the training was to occur, Kiedrowski was out of town. The person who had been expected to cover for Kreamer during training failed to report to work. Tonack therefore decided to postpone the training. Kreamer resigned. When Kiedrowski returned, she immediately met with Tonack and terminated Tonack's employment. Tonack was 49 years old at that time.

The parties waived jury trial and the case was tried to the court. After hearing the evidence, the court concluded that Tonack was terminated from her employment in violation of both the Montana Wrongful Discharge From Employment Act (Wrongful Discharge Act), §§ 39-2-901 to 914, MCA, and the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. It awarded Tonack

3

damages under the Wrongful Discharge Act for four years of future lost wages and benefits. In addition, the court awarded damages under the ADEA, calculating those damages from the last date of damages awarded under the Wrongful Discharge Act to Tonack's expected date of retirement.

I

Are certain findings of fact concerning the claim of violation of the Age Discrimination in Employment Act clearly erroneous?

The bank challenges eighteen of the District Court's findings of fact. Here, we address only those findings relating to the ADEA claim.

This Court will affirm findings of fact if they are not clearly erroneous; that is, if they are supported by substantial evidence, the trial court has not misapprehended the effect of the evidence, and this Court is not left with a definite and firm conviction that a mistake has been made. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. The credibility and weight given evidence and witnesses by the trial court must be granted great weight on appeal. Morning Star Enterprises v. R.H. Grover (1991), 247 Mont. 105, 113, 805 P.2d 553, 558. It is the duty of the trial court, not this Court, to resolve conflicts in the evidence. Wood v. Ulmer's Car and Truck (1989), 236 Mont. 353, 359, 769 P.2d 1264, 1268.

The bank challenges the findings that there were no reviews of Tonack's performance as FSR during her 30 days of probation and that her performance in that position was satisfactory. The record

4

contains Kiedrowski's notes made following the meeting in which she placed Tonack on probation, but we do not consider those informal notes as a performance review. Tonack's last written performance evaluation of record was done by Kiedrowski in May 1990. That evaluation indicated that Tonack was performing "at standard" as FSR/CSR Supervisor. Tonack's exhibits establish that she received the bank's "MVP" award for outstanding sales efforts for the month of September 1990, supporting the finding that her performance as FSR was in fact above average.

The Bank claims there is no evidence to support the findings that Tonack was replaced by a substantially younger employee. A portion of Kiedrowski's deposition appended to a brief filed in District Court established that Rhonda Kreamer withdrew her resignation and assumed some of Tonack's duties after Tonack's employment was terminated. Tonack testified at trial that Kreamer "was a much younger person than I."

The bank challenges several findings concerning statements of George Balback, the president of Montana Bancsystem, the holding company for the bank. Gary Nichols, vice-president of the bank until August of 1990, testified about conversations he had with Balback between January and August of 1990. In those conversations, Balback expressed that he did not believe Tonack was right for her position because of her age and background. Although the bank contends that there was no testimony that Balback said Tonack should be fired because of her age, Nichols' testimony is clearly to that effect. Nichols testified that Balback stated that

5

he had encouraged those responsible to make a change because he did not want Tonack in the FSR position and that he felt Kiedrowski would "get it handled."

The bank challenges the finding that Balback could influence hiring and firing. That finding is supported by Nichols' testimony that Balback had the authority to prevent him from making Tonack teller supervisor.

We hold that substantial evidence supports the above findings and that the court did not misapprehend the effect of the evidence. The findings do not leave us with the impression that a mistake has been made.

## II

Did the District Court incorrectly interpret or misapply the provisions of the ADEA?

The bank claims that Tonack's ADEA case was fatally flawed in that Tonack did not establish the necessary element of pretext. It alleges that the court incorrectly characterized certain evidence as "direct evidence" and challenges certain findings made by the District Court.

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must either provide direct evidence of discrimination or produce evidence that 1) she was in the protected age group; 2) she was performing her job satisfactorily; 3) she was discharged; and 4) she was replaced by a substantially younger person. Rose v. Wells Fargo & Co. (9th Cir. 1990), 902 F.2d 1417, 1421. The burden then shifts to the defendant to articulate a

6

nondiscriminatory reason for the discharge. Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons articulated by the employer for termination are merely a pretext for discrimination. Burdine, 450 U.S. at 253.

Tonack uncontrovertedly established that she was in the protected age group and that she was discharged. Under Issue I, we have approved findings which establish that she was performing her job satisfactorily and that she was replaced by a substantially younger person. We conclude that Tonack presented a prima facie case that the bank violated the ADEA in terminating her employment.

The bank rebutted the presumption of discrimination through its evidence that Tonack was discharged for a legitimate reason, failure to correct deficiencies in the teller supervisor area and her inability to work with others.

Tonack provided evidence to disprove the legitimate explanation offered by the bank. Contrary to the bank's assertions, a court may rely on all evidence, including evidence used to establish a prima facie case, to establish pretext. Burdine, 450 U.S. at 256, n. 10. Also contrary to the bank's assertions, a finder of fact may infer that age discrimination took place. Merrick v. Northern Natural Gas Co. (10th Cir. 1990), 911 F.2d 426, 429. Taken together, the evidence of Tonack's satisfactory performance reviews, the testimony about Balback's statements that Tonack should go and that Kiedrowski would "get the

job done," the erroneous basis for placing Tonack on probation, the ordering of business cards showing Kreamer's position as FSR, and the circumstances of Tonack's termination indicate that the articulated reason for discharge was a pretext.

We hold that the District Court did not incorrectly interpret or misapply the provisions of the ADEA and that it did not err in ruling that Tonack established that the bank violated the ADEA in terminating her employment.

## III

Did the District Court incorrectly interpret or misapply the provisions of the Wrongful Discharge Act?

The Wrongful Discharge Act provides, at § 39-2-902, MCA:

Except as provided in 39-2-912, this part provides the exclusive remedy for a wrongful discharge from employment.

Section 39-2-912, MCA, states:

This part does not apply to a discharge:
(1) that is subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute. Such statutes include those . . . that prohibit unlawful discrimination based on . . . age.

The bank claims these statutes prohibit Tonack from recovering under both the ADEA and the Wrongful Discharge Act.

Tonack cites two Montana federal district court decisions in which it has been held that concurrent actions under the Wrongful Discharge Act and the ADEA are not prohibited when there are separate and distinct factual predicates to support each claim. Vance v. ANR Freight Systems, Inc. (D.Mont. 1991), 9 Mont. Fed. Rpts. 36, 39-40; Higgins v. Food Services of America, Inc. (D.Mont.

8

1991), 9 Mont. Fed. Rpts. 529, 530. We decline to completely follow those decisions, exercising our prerogative as the ultimate authority on the interpretation of Montana statutes.

Section 39-2-912, MCA, provides that the Wrongful Discharge Act does not apply to "a discharge" subject to other statutes. It does not provide that the Act applies to all factual claims not covered by other statutes. Tonack's claims under both the ADEA and the Wrongful Discharge Act relate to one discharge from employment at the bank. We conclude that Tonack may not recover under both the ADEA and the Wrongful Discharge Act.

In Deeds v. Decker Coal Co. (1990), 246 Mont. 220, 805 P.2d 1270, this Court held that the above statutory provisions did not prohibit a wrongful discharge action by union employees because the National Labor Relations Board had not yet filed a complaint against the discharged employees. If the NLRB filed such an action, the Court stated, a "procedure or remedy for contesting the dispute" would be set in motion and the statutory exemption of § 39-2-912, MCA, would apply. Deeds, 805 P.2d at 1271.

Whether a discharge will ultimately be "subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute" is not immediately known when a claim is filed. This must be determined before it is known whether the Wrongful Discharge Act may be applied. It is established only when a finder of fact has made that determination or when judgment on the claim has otherwise been entered. Therefore, we conclude that claims may be filed concurrently under the Wrongful Discharge Act

and other state or federal statutes described in § 39-2-912, MCA, but if an affirmative determination of the claim is obtained under such other statutes, the Wrongful Discharge Act may no longer be applied. To the extent that this conclusion modifies our holding in Deeds, that opinion is so modified.

In this case, the Wrongful Discharge Act was no longer applicable following the District Court's factual determination that the ADEA applied to Tonack's discharge from employment. We therefore hold that Tonack is not entitled to recover damages under the Wrongful Discharge Act, and we reverse the District Court's conclusion on that issue.

Because of the above conclusions and holdings, we do not address the bank's issues concerning computation of damages or the findings of fact relevant to Tonack's claim under the Wrongful Discharge Act. We remand this case to the District Court for recalculation of damages consistent with this Opinion.

_____
Justice

We Concur:

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusions under Issues I and II that the District Court's findings were not clearly erroneous and that the District Court correctly applied the provisions of the Age Discrimination in Employment Act.

I dissent from that part of the majority opinion which holds that plaintiff cannot recover separately under Montana's Wrongful Discharge From Employment Act and the Federal Age Discrimination in Employment Act, even though the factual basis for recovery under each Act is separate and distinct.

The majority relies on § 39-2-912, MCA, of Montana's Wrongful Discharge From Employment Act which provides:

> This part does not apply to a discharge:
>
> (1) that is subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute.

In this case, plaintiff alleged two separate and independent reasons why her termination from employment was unlawful. She alleged that she was terminated because of age discrimination which was a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 through 634. However, she also alleged that she was terminated in violation of her employer's own written supervisor's manual which included the company policies regarding termination. That policy required oral warnings, a written reprimand, and supervised probation. The District Court, in its Finding of Fact No. 36, specifically found that "[d]efendant Bank's

11

termination of Ms. Tonack was also in violation of its written personnel policy set forth within the 'supervisor's manual.'"

Under Montana law a discharge is wrongful if "the employer violated the express provisions of its own written personnel policy." Section 39-2-904(3), MCA. However, there is no other state or federal statute that has been brought to this Court's attention which provides a procedure or remedy for termination that is wrongful on that basis. The plaintiff's claim under federal law was based on termination because of her age. Therefore, I would conclude that § 39-2-912, MCA, does not apply and did not bar the District Court's entry of judgment under both the Federal Age Discrimination in Employment Act, and the Montana Wrongful Discharge from Employment Act.

I agree with the prior decisions of the Federal District Court for the District of Montana in *Vance v. ANR Freight Systems, Inc.* (D. Mont. 1990), Doc. No. CV-90-120-GF, 9 Mont. Fed. Rpts. 36, and *Higgins v. Food Services of America, Inc.* (D. Mont. 1991), Doc. No. CV-90-51-M-CCL, 9 Mont. Fed. Rpts. 529. In *Vance*, the Federal District Court held that:

> [W]here a discharge from employment may be violative of a state or federal law prescribing discrimination, the affected employee is not precluded from pursuing relief under the Montana Wrongful Discharge From Employment Act if the employee can sustain his burden of proof in establishing the factual predicate necessary to establish a claim for relief under the Act.
>
> . . . .
>
> . . . [W]here the factual predicate upon which the affected employee bases his claim under the Act is

12

distinct from the factual predicate upon which the affected employee might otherwise base a claim under state or federal law prohibiting discrimination, he is not precluded from seeking redress under the Act.

*Vance*, 9 Mont. Fed. Rpts. at 39-40.

In *Higgins*, under facts similar to these, the Federal District Court recognized that a federal claim based on discrimination does not preclude a state claim under Montana's Wrongful Discharge From Employment Act for a violation of written personnel policies. Again, the rationale was that each cause of action is based on a distinct and separate factual basis.

In this case, there was no federal or state statutory claim allowing recovery by the plaintiff for termination in violation of the employer's written personnel policies. Therefore, § 39-2-912, MCA, did not apply. For these reasons, I dissent from that part of the majority opinion which holds otherwise. I would affirm the District Court judgment in its entirety.

_____
Justice

13

May 13, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Jeanne M. Bender
Michael B. Anderson
HOLLAND & HART
175 North 27th Street, Suite 1400
Billings, MT 59101

A. Clifford Edwards
Kevin M. Funyak
EDWARDS & PAOLI
P.O. Box 20039
Billings, MT 59104-0039

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy