No. 95-013

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FERGUS FARMING PARTNERSHIP,

       Plaintiff and Appellant,

-vs-

FIRST CONTINENTAL CORPORATION,
a Montana corporation, et al.,

       Defendants and Respondents.

FILED

JUL 06 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
                  In and for the County of Fergus,
                  The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Charles F. Moses; Moses Law Firm,
              Billings, Montana

       For Respondents:

              Norman L. Newhall; Linnell, Newhall & Martin,
              Great Falls, Montana

Submitted on Briefs:  June 15, 1995

Decided:  July 6, 1995

Filed:

_____
            Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Fergus Farming Partnership appeals from the judgment entered on findings of fact and conclusions of law by the Tenth Judicial District Court, Fergus County, and from the court's order denying its post-judgment motions. We affirm.

We restate the issues on appeal as follows:

1. Are certain of the District Court's findings of fact clearly erroneous?

2. Did the District Court err in concluding that First Continental Corporation is the real party in interest?

3. Did the District Court err in concluding that First Continental Corporation is entitled to recover attorney fees?

FACTUAL AND PROCEDURAL BACKGROUND

This case centers on an agreement in the nature of a contract for deed (Contract) and a lease (Lease). The convoluted facts are set forth in an abbreviated and simplified manner to set the stage for our analysis of the relatively narrow issues raised in this appeal.

The Contract was entered into in 1979 between Fox Grain & Cattle Company (Fox Grain) as seller, and First Continental Corporation (FCC) as buyer, for the sale and purchase of real property (the property) located in Fergus County, Montana. The Contract provided that, in the event of assignment by FCC, FCC would remain liable for performance.

In 1987, FCC assigned all of its right, title and interest in

2

the Contract to numerous farming partnerships formed by John Parker and Marvin Brown, including Fergus Farming Partnership (FFP). The assignee farming partnerships, including FFP, assigned their interests in the Contract to Ron Miller (Miller). Miller subsequently assigned his interest in the Contract to Agri-West, Inc., now known as WE2CO (WE2CO).

Shortly after FCC assigned its interest in the Contract, it executed a lease (Lease) of the real property, subject to the Contract, to FFP. FFP took possession of the property as lessee and hired Top Gun, Inc. (Top Gun) to perform custom farming services. FCC subsequently assigned its interest in the Lease to Miller.

FCC did not make the annual payment due under the Contract on May 15, 1988. Fox Grain sent a notice of default to FCC, the assignee farming partnerships and Miller, the partnerships' assignee. Pursuant to the notice of default, Fox Grain evicted FFP and took possession of the property in July of 1988.

Fox Grain filed an action against FCC, FFP and the other farming partnerships, John Parker and Ron Miller. It sought to enjoin the defendants from selling or encumbering the growing crops on the property and to clear title to the property by an order declaring it to be the owner by reason of FCC's breach of the Contract. The various defendants filed numerous counterclaims and cross-claims. FFP cross-claimed against FCC and Miller, alleging breach of the Lease's covenant of peaceful possession. FCC denied the claims against it by FFP and, as Top Gun's assignee, alleged a

3

counter cross-claim against FFP for the amounts due on Top Gun's custom farming service contract.

All claims involving Fox Grain, the original plaintiff in what had become a complex series of claims among and between the parties, settled prior to trial. The cross-claims of John Parker and FFP against FCC, Miller and WE2CO for breach of the Lease, and FCC's counter cross-claim against FFP regarding the Top Gun contract, were tried to the court.

The District Court entered extensive findings of fact, conclusions of law and an order in favor of FCC on FFP's claims against it and also on its counter cross-claim against FFP. The court concluded that the Lease terminated by its terms at the end of 1988 and was not enforceable thereafter. It also concluded that, although FCC breached the Lease's covenant of peaceful possession when Fox Grain repossessed the property in July of 1988, the breach did not damage FFP because the repossession saved FFP from losses which exceeded damages recoverable against FCC for the breach. The court awarded FCC $81,834.43 on its claim against FFP on the Top Gun account, plus interest thereon, and attorney fees.

Judgment subsequently was entered for FCC against FFP in the total amount of $ 153,632.10. FFP's post-judgment motions to alter or amend, for a new trial, and for amendment of findings of fact and conclusions of law were denied. FFP appeals.

### STANDARDS OF REVIEW

Our standard in reviewing a district court's findings of fact is whether those findings are clearly erroneous. Rule 52(a),

4

M.R.Civ.P. Findings are clearly erroneous if they are not supported by substantial credible evidence; in the event findings are supported by such evidence, they may still be clearly erroneous if the district court misapprehended the effect of the evidence or if this Court is left with the definite and firm conviction that a mistake has been committed. Y A Bar Livestock Co. v. Harkness (Mont. 1994), 887 P.2d 1211, 1213, 51 St.Rep. 1517, 1519 (citation omitted).

We review a district court's conclusions of law to determine whether they are correct. Steiner v. Dep't of Highways (Mont. 1994), 887 P.2d 1228, 1232, 51 St.Rep. 1496, 1499 (citation omitted).

1. Are certain of the District Court's findings of fact clearly erroneous?

FFP challenges certain of the District Court's findings of fact and, assuming that they are erroneous, presents a plethora of law which it asserts would apply if the facts were found in FFP's favor. Because we conclude that the challenged findings of fact are not clearly erroneous, we do not address the legal arguments associated with the challenged findings.

a. Is the District Court's Finding of Fact No. 20 supported by substantial credible evidence?

Finding of Fact No. 20 states:

The lease of the Property from FCC to FFP provided, among other matters, that the Lease is "subject to the property qualifying for the ASCS government program." The parties to the Lease knew, understood and intended that the term "qualifying for the ASCS government program" meant that the partnership must qualify for multi-person determination under the ASCS government program.

5

FFP contends that the court's interpretation of the quoted Lease language is erroneous. It asserts that the Lease language is clear and unambiguous in its meaning that the parties intended merely that the property itself must qualify for farm subsidy programs, rather than that FFP, the farming partnership, must qualify for the multi-person determination.

The record establishes the existence of more than one "ASCS government program," thus rendering the language of the Lease ambiguous here. As a result, the District Court properly considered the parties' intent with regard to the quoted Lease language and entered the challenged Finding of Fact.

The record is replete with evidence supporting the court's finding regarding the parties' intent. That evidence includes the testimony of Marvin Brown--who, with John Parker, formed the farming partnerships--that neither the farms nor the leases were economically viable unless the farming partnerships qualified for multi-person participation in the farm program and that such qualification was a condition to the validity of the leases. Parker also testified that achieving multi-person determination was necessary for the farms to be viable. We conclude that substantial credible evidence supports the District Court's Finding of Fact No. 20.

    b.    Is the District Court's Finding of Fact No. 32
    supported by substantial credible evidence?

The Lease between FCC and FFP provided that FFP would notify FCC by February 1, 1988, if it was unable to obtain crop financing for the 1989 crop; in that eventuality, "LESSOR and LESSEE agree to

6

cancel" the Lease in 1988, with FFP remaining liable for the land rent on October 1, 1988. In conjunction with these Lease provisions, the District Court's Finding of Fact No. 32 states that "As clearly indicated by the foregoing, FFP did not obtain crop financing for the 1989 crop by February 1, 1988." This Finding is the basis of the court's conclusion that the Lease terminated by its terms at the end of 1988.

FFP contends that the Finding is not supported by substantial evidence. Its argument, however, relates to a different question; namely, whether FFP actually needed the crop financing required by the Lease. That question is irrelevant in determining whether FFP complied with the Lease provision that it have 1989 crop financing in place by February 1, 1988.

The record contains substantial evidence that financing for the 1989 crop was not timely obtained. Indeed, an April, 1988, letter from John Parker reflects that FFP was still attempting to obtain financing for the expenses necessary to harvest the 1988 crop. We conclude that substantial credible evidence supports the District Court's Finding of Fact No. 32.

    c. Are the District Court's Findings of Fact No. 49 through No. 51 supported by substantial credible evidence?

The challenged Findings determine that FFP would have experienced a net loss in 1988 of $140,743.04 (income minus costs and expenses) if Fox Grain had not repossessed the property due to FCC's default under the Contract and that its loss as of the time of repossession was $33,607.01; therefore, the repossession--rather

7

than causing FFP damages--actually saved it from greater losses. These Findings relate to whether FFP proved its entitlement to damages for FCC's breach of the Lease when § 27-1-303, MCA, generally limits recovery for the breach of an obligation to the amount the nonbreaching party could have gained by full performance of the obligation by both sides.

FFP advances evidence of record pursuant to which the court could have determined that certain of FFP's expenses were less than those found, and aggregated, by the court to determine the amount of losses FFP would have experienced absent Fox Grain's repossession. It also argues that evidence supported its claim that FFP would have shown a profit for 1988.

These arguments ignore our standard of review. We do not examine the record to determine whether it supports findings different from, or contrary to, those made by the court; such an approach would amount to substituting our judgment for that of the factfinder with regard to the credibility of witnesses and the weight to be given to the evidence. Those assessments must remain firmly lodged in the province of the trier of fact. See Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 854 P.2d 326.

Evidence of record establishes that, even if FFP had received the value of the 1988 crops, its costs and expenses for 1988--even excluding the Lease payment due October 1--would have exceeded its 1988 income. Moreover, additional expenses would have been incurred without additional income prior to the end of 1988, including payment of the Top Gun account and the $104,500 October

8

Lease payment. We conclude that the District Court's Findings of Fact No. 49 through No. 51 are supported by substantial credible evidence.

> d. Are the District Court's Findings of Fact No. 45 and No. 46 supported by substantial credible evidence?

Findings of Fact No. 45 and No. 46 relate to FCC's counter cross-claim against FFP under Top Gun's assignment of its claim for the amount due on its custom farming service account with FFP. The District Court found that, after deducting certain credits and payments on the account, FFP owed Top Gun $81,834.43, and that Top Gun's claim had been assigned to FCC.

FFP does not dispute the assignment of Top Gun's claim to FCC. It contends, however, that Top Gun's billing statements for 1987 and 1988, supported by underlying documentation, establish that the total amount due was $35,291.82, and that no evidence supports the court's finding of fact in the higher amount. We disagree.

FCC introduced evidence supporting different amounts with reference to the Top Gun account than those contained in FFP's evidence. FCC's evidence indicated that FFP owed Top Gun $81,834.43.

The District Court, faced with conflicting evidence, accepted that offered by FCC. It was within the court's province as the trier of fact to do so. See Tonack, 854 P.2d at 329. We conclude that the District Court's Findings of Fact No. 45 and No. 46 are supported by substantial credible evidence.

Having concluded that all of the Findings of Fact challenged by FFP are supported by substantial credible evidence, we further

9

conclude that the District Court did not misapprehend the effect of the evidence; nor are we left with a definite and firm conviction that a mistake has been committed. Therefore, we hold that the District Court's Findings of Fact are not clearly erroneous.

> 2. Did the District Court err in concluding that FCC, rather than Ron Miller or WE2CO, is the real party in interest?

This issue relates to FFP's effort to recover damages for breach of the Lease. Our conclusion that the District Court's Findings of Fact--which supported its conclusions and judgment in FCC's favor--are not clearly erroneous precludes any entitlement by FFP to damages for the breach. Thus, we need not address this issue.

> 3. Did the District Court err in concluding that FCC is entitled to recover its attorney fees?

FFP agrees that the Lease provides for the recovery of attorney fees; nor does it dispute that § 28-3-704, MCA, provides for reciprocal attorney fees such that the prevailing party in an action on the Lease may recover attorney fees. FFP relies on the District Court's conclusion that FCC breached the lease in arguing that FCC cannot recover attorney fees under either the Lease or the statute. FFP also argues that its agreement with Top Gun, upon which FCC recovered damages against it, does not provide for attorney fees and, therefore, no attorney fees could be awarded to FCC for legal work associated with that portion of the case.

FFP's arguments regarding FCC's entitlement to attorney fees under either the Lease or the statute ignore the fact that, while

10

FCC breached the Lease, it succeeded in defending against FFP's breach claim because its breach did not cause FFP any recoverable damages. Thus, FCC was entitled to attorney fees pursuant to the Lease in defending against that claim.

With regard to attorney fees relating to FCC's claim against FFP on the Top Gun account, it is true that the agreement between Top Gun and FFP did not provide for attorney fees and, absent contractual or statutory authority, no such fees could be recovered. It is also clear, via affidavit on the fee issue, that FCC made a good faith attempt to include in its attorney fee request only those fees which it incurred in defense of FFP's claim. Of the $34,223.45 in total attorney fees incurred, FCC requested an award of $28,223.70, its counsel's estimate of fees related to defending against FFP's claim. Moreover, deposition testimony in support of the amount of fees requested by FCC indicated that the time expenditure in proving the Top Gun account "would have been very nominal compared to the balance of the defense of the case . . . " and, indeed, that the preparation of the necessary documentation and the admission of the related evidence at trial would have required "very little time." The court awarded attorney fees in the amount of $23,129.25, a reduction from the requested amount of approximately $5,000.

We conclude that the District Court did not err in determining that FCC was entitled to attorney fees for successfully defending against FFP's claim.

AFFIRMED.

11

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____

_____

_____
Justices