No. 97-564

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 154N

IN RE THE MARRIAGE OF

SAMUEL YATES,

Petitioner and Respondent,

and

RENEE YATES,

Respondent and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Christopher Daly, Missoula, Montana

For Respondent:

Samuel Yates, Missoula, Montana (pro se)

Submitted on Briefs: April 2, 1998

Decided: June 18, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2 Renee Yates appeals from the Findings of Fact, Conclusions of Law and Final Decree of Dissolution entered by the Twenty-First Judicial District Court, Ravalli County, and from its supplemental findings and ratification of its earlier judgment entered on remand. We affirm.**

**¶3 We address the following issues on appeal:**

**¶4 1. Did the District Court abuse its discretion in excluding statements by the child offered through her mother and maternal grandmother?**

¶5 2. Did the District Court abuse its discretion in awarding custody of the child by relying on the evaluation report submitted by Dr. Cindy Miller?

¶6 Renee Yates (Renee) and Samuel Yates (Samuel) married in 1992. They had one child, Katherine Sage Yates (Sage), who was born in February of 1993. Samuel petitioned for dissolution in April of 1995, and the District Court heard the matter on November 4 and December 5, 1996. Thereafter, the District Court entered its findings, conclusions and decree of dissolution determining, in part, that Renee and Samuel should have joint legal custody of Sage and that Samuel should be designated as the primary residential custodian. The court rejected Renee's allegations that Samuel sexually abused Sage, finding that both law enforcement and the Department of Family Services (now the Department of Public Health and Human Services) had investigated the allegations and determined that they were unsubstantiated. The court relied heavily in the custody portions of its decision on an evaluation report by Dr. Cindy Miller (Dr. Miller), a clinical psychologist, which was performed at the court's direction and submitted after the hearing.

¶7 Renee appealed and the parties stipulated to a remand for the limited purposes of a hearing at which Dr. Miller could be examined, followed by an amended decision by the District Court incorporating any additional information presented at the hearing on remand. This Court ordered the remand on November 4, 1997, and the District Court held the hearing on remand on December 5, 1997. At the close of the hearing, the court orally announced its supplemental findings which, in essence, ratified its reliance on Dr. Miller's report by finding that no additional evidence had been presented of such significance as to alter its earlier decision. Pursuant to our order, Renee advised this Court that she would continue with her appeal.

¶8 1. Did the District Court abuse its discretion in excluding statements by Sage offered through her mother and maternal grandmother?

¶9 On three occasions during the hearing, Sage's maternal grandmother and Renee testified to statements made by Sage. All of the statements purportedly related to Renee's accusations that Samuel had sexually abused Sage. On the first occasion, Samuel's counsel objected that the testimony was hearsay, Renee's counsel did not offer a basis under which the statements would be admissible, and the District Court sustained the objection. On the second occasion, Samuel's counsel again objected on the basis of hearsay, Renee's counsel offered the statements first as ''state of mind''

evidence and, when the District Court opined that the statements would not fit under the present sense impressions exception, offered the statements as an excited utterance; the District Court sustained the objection. On the third occasion, Samuel's counsel made a continuing objection on hearsay grounds, which the District Court again sustained, as to Sage's statements to Renee. Renee asserts error with regard to all of the rulings excluding Sage's statements. We review a trial court's evidentiary rulings to determine whether the court abused its discretion. State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380 (citation omitted).

¶10 Renee faults the District Court for not determining whether Sage was or was not available as a witness for purposes of determining under which hearsay exception her statements might be admissible. She then advances a laundry list of exceptions to the hearsay rule under which Sage's statements may have been admissible: the present sense exception contained in Rule 803(1), M.R.Evid; the excited utterance exception in Rule 803(2); the then-existing mental, emotional or physical condition exception in Rule 803(3); the "[o]ther exceptions" set forth in Rule 803(24); and the "[o]ther exceptions" set forth in Rule 804(b)(5), which are applicable when the declarant is unavailable. In addition, she contends that certain of the statements at issue were not hearsay at all and, therefore, no hearsay exception was necessary to render the statements admissible.

¶11 The flaw in most of Renee's arguments in this regard is clear. She did not argue in the District Court that the statements were not hearsay. Nor did she argue that Sage was unavailable as a witness for purposes of applying the Rule 804(b)(5), M.R. Evid., "other exceptions." Renee also did not contend that the statements were admissible pursuant to Rule 803(24), M.R.Evid. Indeed, as noted above, Renee offered the District Court no basis at all on which the first statements testified to by Sage's maternal grandmother would be admissible.

¶12 It is beyond cavil that a party may not raise issues for the first time on appeal. *See, e.g.,* Matter of R.B.O. (1996), 277 Mont. 272, 283, 921 P.2d 268, 274 (citation omitted). Therefore, we decline to address the arguments listed in the preceding paragraph and any argument now advanced by Renee in support of the first statements excluded by the District Court, since none of these arguments was advanced in the District Court. We turn then to the second and third sets of statements excluded by the District Court and address whether the statements qualified for the exceptions to the hearsay rule set forth in subsections (1), (2), and

(3) of Rule 803, M.R.Evid., all of which were at least partially advanced by Renee in support of the admissibility of the statements.

¶13 Rule 803(1), M.R.Evid., provides that a statement describing or explaining an event which is made while the declarant was perceiving the event, or immediately thereafter, is not excluded by the hearsay rule even though the declarant is available as a witness. The record with regard to both the second and third set of statements excluded by the District Court is clear that Sage did not make any of the statements at issue while she was perceiving any event to which the statements related. Furthermore, no testimony by either Sage's grandmother or Renee establishes that any of the statements were made immediately after the time of the alleged events to which the statements related. We conclude, therefore, that the statements were not admissible under Rule 803(1), M.R.Evid., as present sense impressions.

¶14 Rule 803(2), M.R.Evid., is the "excited utterance" exception to the hearsay rule, under which statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are not excluded by the hearsay rule. Here, the record does not establish that Sage made any of the statements attributed to her while under any "stress of excitement" caused by the events being described. Thus, we conclude that the statements were not admissible under Rule 803(2), M.R.Evid.

¶15 Finally, Rule 803(3), M.R.Evid., provides that statements of the declarant's then-existing state of mind, emotion, sensation, or physical condition are not excluded by the hearsay rule. After close scrutiny of the record, we conclude that several of Sage's statements--including, but not limited to, that she "hurt" in her rectal area--were admissible under Rule 803(3), M.R.Evid., as statements of a then-existing state of mind or physical condition.

¶16 That does not end our inquiry, however, because error may not be predicated on an erroneous evidentiary ruling unless a substantial right of the party is affected. *See* Rule 103(a), M.R.Evid. Here, as noted above, Renee sought to admit Sage's statements to bolster her accusations that Samuel had sexually abused Sage and, as a result, should not be designated the primary residential custodian. As also noted above, the District Court expressly found that law enforcement and the Department of Family Services (Department) had investigated Renee's accusations and declined to take further action. The District Court also found that the Department had

No

determined that, in fact, Renee was emotionally abusing Sage with her persistence in repeated accusations of sexual abuse without substantiation. Moreover, the court noted Dr. Miller's hypothesis that Renee was pressuring Sage to make false negative statements about her father. Taking the District Court's extensive findings regarding the alleged sexual abuse by Samuel as a whole, all of which controverted Renee's position, it is clear that admitting several of Sage's statements pursuant to Rule 803 (3), M.R.Evid., would not have changed the District Court's ultimate decision and, therefore, did not affect Renee's substantial rights.

¶17 We conclude, therefore, that the District Court abused its discretion in excluding several of Sage's statements which were properly admissible under Rule 803(3), M.R. Evid. We hold, however, that the error was harmless and not reversible.

¶18 2. Did the District Court abuse its discretion in awarding custody of Sage by relying on the evaluation report submitted by Dr. Miller?

¶19 As set forth above, the District Court's findings of fact relating to custody and its ultimate decision to designate Samuel as the primary residential custodian were based in large part, but not entirely, on Dr. Miller's evaluation report. That report initially was submitted without an opportunity for the parties to examine Dr. Miller and, on remand, both parties questioned her. The District Court subsequently ratified its earlier reliance on Dr. Miller's report and orally entered supplemental findings. Renee contends that the District Court's decision to designate Samuel as Sage's primary residential custodian, based on Dr. Miller's report, was erroneous. We will overturn a district court's custody decision only when the court's findings and conclusions clearly demonstrate an abuse of discretion. In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723 (citation omitted).

¶20 Renee first makes a passing reference to the requirement that a district court consider the criteria set forth in § 40-4-212, MCA, in determining the best interests of the child. She highlights the criteria relating to the mental and physical health of all of the parties and abuse or threat of abuse by a parent and cites to Maxwell v. Maxwell (1991), 248 Mont. 189, 192, 810 P.2d 311, 313, for the proposition that a court cannot ignore circumstances which may endanger the child. While Renee's references to the statutory criteria and *Maxwell* clearly are correct, they are of no assistance to Renee here, since it is clear that the District Court considered and addressed the criteria at length and did not ignore any circumstances which might

endanger Sage.

¶21 Next, Renee argues that the District Court improperly rejected the evidence presented by Marsha Kirchner (Kirchner), who had both evaluated and treated Sage, and who was the only professional concluding that Renee's allegations about sexual abuse were substantiated. The District Court's rejection of Kirchner's evaluation of Sage was based on its determination that the evaluation was not credible because Kirchner had both evaluated and treated Sage. Credibility determinations and the weighing of conflicting evidence are within the province of the finder of fact. *See* Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 251-52, 854 P.2d 326, 329 (citation omitted). We do not substitute our judgment for that of the factfinder on such matters.

¶22 Finally, Renee contends that, because Dr. Miller spent substantially less time with Sage than Kirchner did and treated Renee and Samuel differently with regard to their interactions with Sage, the District Court abused its discretion in relying on her report. As set forth above, however, it is the duty of the factfinder--not this Court--to weigh conflicting evidence. *See Tonack,* 258 Mont. at 251-52, 854 P.2d at 329. That others may have weighed the evidence differently does not constitute an abuse of discretion.

¶23 We conclude that the District Court did not abuse its discretion in relying on Dr. Miller's report in making its custody determination. As a result, we hold that the District Court's findings and conclusions relating to custody do not clearly demonstrate an abuse of discretion.

¶24 Affirmed.

/S/ KARLA M. GRAY

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

No

/S/ TERRY N. TRIEWEILER