No. 84-559

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

MISSOULA COUNTY,

       Plaintiff and Appellant,

  -vs-

AMERICAN ASPHALT, INC.,

       Defendant and Respondent.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert L. Deschamps, III, County Attorney, Missoula,
Montana

    For Respondent:

        Snavely & Phillips, Missoula, Montana
Worden, Thane & Haines; Ronald Bender, Missoula,
Montana

---

Submitted on Briefs:  March 14, 1985

Decided:  June 25, 1985

Filed:  JUN 25 1985

*Ethel M. Harrison*
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Missoula County appeals from a judgment of the Fourth Judicial District, Missoula County, holding that sections 76-1-113 and 76-2-209, MCA exempted American Asphalt's mining operations from county zoning and planning. We affirm.

The Department of State Lands issued a permit to American Asphalt under the Montana Open Cut Mining Act, section 82-4-401, et seq., MCA, on September 1, 1982 and American Asphalt began excavating gravel. This Department required American Asphalt to create a visual and sound barrier of topsoil; to plant trees to reduce visual and sound impact; to use dust suppressant on the road to the pit; to fence the area to protect children; and to drive trucks entering or leaving the mine only on a specific route in order to avoid driving by an elementary school.

The Missoula Planning Office, in response to a citizen's complaint, asked them to cease excavation within the Clark Fork River Floodplain area until they obtained a floodplain permit. When American Asphalt continued to excavate gravel without a permit, Missoula County sought a preliminary injunction to halt the operation. On September 14, 1982, the District Court denied the request for an injunction but ordered American Asphalt to apply for a floodplain permit.

American Asphalt applied for and received a permit on November 9, 1982 from the Board of County Commissioners. The floodplain permit was limited to gravel extraction unless the court decided other proposed activities were allowable under

the applicable zoning and comprehensive planning for the area.

The subject property was zoned for single family residential uses with a limit of one dwelling per acre prior to the gravel extraction by American Asphalt. The uses designated in the Missoula Urban Area Comprehensive Plan are rural low density residential, parks and open space. Gravel extraction, gravel processing, and asphalt and concrete production are not permitted uses in this zone. The County regulations currently allow gravel extraction only in certain areas with a special exception permit. Processing, of gravel, such as washing, screening, crushing and mixing with asphalt oil or cement is allowed only in industrial zones.

American Asphalt is currently extracting, washing, crushing, and sorting gravel with special equipment on the site. They intend to locate an asphalt batch plant in which asphalt oil is added to the sorted gravel and a concrete batch plant in which cement is added to the sorted gravel on the site as well. According to testimony presented by American Asphalt at trial, the asphalt and concrete batching are part of the recovery process. The District Court found that these activities are contained within the terms "mining", "use" and "recovery" as commonly used in the industry.

Missoula County, in an amended complaint filed October 12, 1982, sought a declaratory judgment on the issue stated above. The case was heard by the District Court, sitting without a jury, on June 28 and 29, 1984. On July 31, 1984, the District Court issued findings of fact and conclusions of law and judgment in favor of American Asphalt. Missoula County appeals from that part of the judgment holding that

3

sections 76-1-113 and 76-2-209, MCA exempt all mining operations from the zoning and comprehensive planning of Missoula County.

The issues presented for review are:

(1) Did the District Court properly interpret sections 76-1-113 and 76-2-209, MCA to exempt American Asphalt's gravel operations from Missoula County zoning and planning regulations?

(2) Did the District Court correctly find that the activities of American Asphalt were within the "complete use, development and recovery of a mineral resource" pursuant to section 76-2-209, MCA?

Section 76-2-209, MCA, part of the zoning enabling legislation, provides: "No resolution or rule adopted pursuant to the provisions of this part . . . shall prevent the complete use, development, or recovery of any mineral, forest, or agricultural resources by the owner thereof." The chapter on planning contains a nearly identical provision, section 76-1-113, MCA which states: "Nothing in this chapter shall be deemed to authorize an ordinance, resolution, or rule which would prevent the complete use, development, or recovery of any mineral, forest, or agricultural resources by the owner thereof."

Missoula County contends that these statutes do not prohibit the regulation of the location and manner of performance of gravel extraction and processing activities; the legislature did not intend to prohibit counties from exercising any form of planning and zoning over mineral resources; and the phrase "complete use, development, or recovery" does not include the range of activities proposed by American Asphalt. American Asphalt contends that the

4

statutes prohibit any rule or regulation under zoning and planning law which would interfere with a property owner's complete use, development and recovery of a mineral resource and Missoula County's interpretation would render the statutes a nullity.

The fundamental rule of statutory construction is that the intention of the legislature controls. Section 1-2-102, MCA; Montana Department of Revenue v. American Smelting and Refining Co. (1977), 173 Mont. 316, 324, 567 P.2d 901, 906, appeal dismissed 434 U.S. 985, 98 S.Ct. 884, 54 L.Ed.2d 793, and Haker v. Southwestern Railway Co. (1978), 178 Mont. 364, 578 P.2d 724. The intention of the legislature must first be determined from the plain meaning of the words used. Haker, 578 P.2d at 727; State ex rel. Sol v. Bakker (Mont. 1982), 649 P.2d 456, 39 St.Rep. 1471; and Tongue River Electric Co-Op, Inc. v. Montana Power Co. (1981), 636 P.2d 862, 864, 38 St.Rep. 2032. If the intent of the statute cannot be determined from the plain meaning, the court then may resort to other rules of statutory construction. State ex rel. Sol, 649 P.2d at 459. The District Court concluded that the statutes in question were not of doubtful meaning and that the statutes exempted all mining operations from Missoula County's zoning and planning authority. However, neither statute expressly prohibits regulation of mineral processing or extraction. The statutes only say that no regulation shall prevent the complete use, development or recovery of certain natural resources.

An illustration of plain language expressly prohibiting regulation of particular land uses is found in section 76-2-109, MCA. That section states: "No planning district or recommendations adopted under this part shall regulate lands

5

used for grazing, horticulture, agriculture, or the growing of timber." Section 76-1-113 and 76-2-209, MCA, by comparison, do not prohibit regulation of the named resources by their plain language, they merely say any regulations imposed by the county cannot result in preventing the complete use, development or recovery of the named resources.

Part of the legislative purpose of these statutes is clear and unambiguous. They demonstrate the legislature's awareness that a range of activities must occur on site in order for the owner of mineral, timber, or agricultural resources to benefit and that the legislature did not intend for counties to have the power to prevent the owner from having that benefit. However, what the range of activities are that cannot be prevented, is by no means clear and unambiguous.

There is ambiguity in the interpretation and construction of the phrase "complete use, development, or recovery of any mineral . . . resource" and its application to gravel extraction and processing. In order to interpret this phrase within the plain meaning rule "the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning." In re Matter of McCabe (1975), 168 Mont. 334, 339, 544 P.2d 825, 828. If the statutes plainly expressed legislative intent without straining interpretation, no extension beyond that plain popular meaning would be required. Adams v. Morton (C.A.Mont. 1978), 581 F.2d 1314, 1320, cert. denied. Gros Ventre Tribe of Fort Belknap Indian Reservation v. U.S. (1979), 440 U.S. 958, 99 S.Ct. 1498, 59 L.Ed.2d 771. If we resort to technical meanings or other related statutes in order to ascertain legislative intent, then we are no longer within the plain

6

meaning rule. The District Court here relied on the technical meanings of the words within the gravel industry in order to interpret and apply the statutes.

A reasonable construction of these broad statutes depends, to an extent, on the circumstances in which they are applied. Therefore, we must look to industry practices to discern the extent to which the legislature authorized the regulation of "use, development or recovery." Considering the legislative intent to not prevent the owner of the resource from benefiting, a county must at least allow the activities necessary to develop the resource to a point at which it can be effectively utilized. In the case at bar, the District Court found that processing occurs at the site of gravel extraction because the cost of transporting the material elsewhere for processing would render the mining economically infeasible. The District Court also found that gravel processing on site includes washing, crushing, screening, and concrete and asphalt batching and that these activities are part of the recovery of gravel resources. Missoula County argues that if gravel mining industry practices are relevant to this case, American Asphalt did not produce sufficient evidence to show that industry practices include the full range of processing on site. We will not reverse a District Court's findings of fact unless the record as a whole lacks substantial, credible evidence to support the findings. Wallace v. Wallace (Mont. 1983), 661 P.2d 455, 457, 40 St.Rep. 430, 433. We hold that the record supports the District Court's findings noted above and that the District Court properly applied the statutes involved.

Missoula County has urged this Court to construe the meaning of these statutes in a broader context applicable to

7

all mineral, agricultural, and timber resources. The record before us concerns gravel mining in a particular geographic location. We decline to announce a broad, sweeping interpretation on such a narrow record and restrict the holding of this opinion accordingly.

The District Court's judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices