No. 92-083

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JAMES ALLISON,

      Plaintiff and Respondent,

v.

JUMPING HORSE RANCH, INC.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard C. Nellen and James A. McLean,
Drysdale, McLean, Nellen & Nellen,
Bozeman, Montana; Michael P. Sand, Sand
Law Offices, Bozeman, Montana

    For Respondent:

        Edmund P. Sedivy, Jr., and David L. Weaver,
Morrow, Sedivy & Bennett, Bozeman, Montana

Submitted on Briefs:  August 6, 1992

Decided:  December 8, 1992

FILED

Filed:    DEC 8 - 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Respondent James Allison brought his claim for wrongful discharge in the Montana Fifth Judicial District Court, Madison County. Appellant Jumping Horse Ranch filed a motion for summary judgment claiming the statute of limitations had passed. The motion was denied by the District Court. After respondent had presented his case in chief, appellant moved for a directed verdict on the same basis as the motion for summary judgment, which was also denied. The jury returned a verdict in favor of respondent. Appellant appeals from both denials.

We affirm.

We rephrase appellant's issue as follows:

At what point, under § 39-2-911(1), MCA, of the Wrongful Discharge From Employment Act, does the statute of limitations begin to run?

In 1971, respondent was hired as a ranch manager by Robert M. Beck, owner of the Jumping Horse Ranch, Inc. (hereinafter "ranch"). Respondent worked for appellant for approximately 17 years. Apparently during the 1980s the ranch began losing money. On July 12, 1988, Beck notified respondent that he was to be terminated as an employee because Beck believed he was burned out on ranching and would "jump ship" and start his own outfitting business. However, on the same day, Beck requested that respondent stay on until October 1, 1988, to assist and train the new manager, which respondent agreed to do. Respondent continued to receive his

2

$3000 monthly salary and benefits. On November 3, 1988, Beck, as president of the ranch, signed a census report regarding the ranch's employee pension program which listed respondent's date of termination as October 1, 1988. On September 29, 1989, respondent filed a complaint for wrongful discharge against appellant. Respondent complained that he was wrongfully terminated because of Mrs. Helen Beck's "grumblings."

On May 29, 1990, appellant filed a motion for summary judgment on the basis that the statute of limitations had passed, pursuant to § 39-2-911(1), MCA. The motion was denied. After respondent presented his case in chief, appellant moved for a directed verdict on the same basis. This motion was also denied. On January 24, 1992, the jury returned a unanimous verdict in favor of respondent. Appellant appeals the denial of both motions.

At what point, under § 39-2-911(1), MCA, of the Wrongful Discharge From Employment Act, does the statute of limitations begin to run?

Appellant argues that the time begins to run from the notice of discharge.

The legislature has expressly intended that the Wrongful Discharge From Employment Act be the exclusive remedy for wrongful discharge. Section 39-2-902, MCA. The Act preempts common law remedies and alters the statute of limitations that could be obtained under common law theory for breach of the implied covenant of good faith and fair dealing. Sections 39-2-913 and -911, MCA.

3

The statute of limitations for bringing a wrongful discharge claim is governed by § 39-2-911 (1), MCA, which states that "an action under this part must be filed within 1 year after the date of discharge." Section 39-2-903(2), MCA, defines "discharge" as including:

> [C]onstructive discharge as defined in subsection (1) and any other <u>termination of employment</u>, including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees for a legitimate business reason. [Emphasis added.]

The statute fails to define "termination of employment" and is silent as to when the "termination of employment" would become effective. Therefore, we must determine what was the intention of the legislature when the Wrongful Discharge From Employment Act was passed.

In order to make that determination we must first look to the plain meaning of the words used in the statute. Missoula County v. American Asphalt, Inc. (1985), 216 Mont. 423, 701 P.2d 990. To interpret a phrase within the plain meaning rule, ""the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning."" <u>American Asphalt</u>, 701 P.2d at 992 (quoting In re Matter of McCabe (1975), 168 Mont. 334, 339, 544 P.2d 825, 828).

"Termination of employment" is a term of art and refers to the existence of the relationship of employer and employee. It has been defined to mean "a complete severance of the relationship of

4

employer and employee by positive act on the part of either or both." Edwards v. Equitable Life Assur. Soc. (Ky. 1944), 177 S.W.2d 574, 577. See also Black's Law Dictionary 1641 (Rev. 4th ed. 1968). We have previously defined "terminate" as meaning ""[t]o put an end to; to make to cease; to end."" Towne v. Towne (1945), 117 Mont. 453, 465, 159 P.2d 352, 357, (quoting Webster's International Dictionary (2d ed.)).

Appellant contends that respondent failed to file his claim for wrongful discharge within the applicable statute of limitations under § 39-2-911, MCA, and relies on our holding in Martin v. Special Resource Management, Inc. (1990), 246 Mont. 181, 803 P.2d 1086. In Martin, we stated that the statute of limitations begins to run on a terminated employee's action for breach of the implied covenant of good faith and fair dealing on the date of notice given to the employee. Appellant argues that although Martin did not address the Wrongful Discharge From Employment Act, the reasoning behind the decision is still valid in that if a person is standing on the edge of a cliff and is pushed off, he need not wait to hit the ground before knowing his cause of action accrued. We disagree.

We specifically limited the holding in Martin to the facts of the case. In that case, the appellant was given notice on June 16, 1987, that her position would be terminated on July 17, 1987, slightly more than two weeks after the Wrongful Discharge From Employment Act became effective. The issue phrased in Martin was

5

"[a]t what point did an actionable cause for termination <u>arise in this case</u>--upon notice of the termination or when termination became effective?" [Emphasis added.] <u>Martin</u>, 803 P.2d at 1087. This Court held that it was upon notice of termination because all of the elements of her cause of action accrued at the time of notice, and therefore, the Wrongful Discharge From Employment Act was not applicable to her cause of action.

In Kitchen Krafters, Inc. v. Eastside Bank (1990), 242 Mont. 155, 789 P.2d 567, which is also a case based on the theory of breach of the implied covenant of good faith and fair dealing, we analyzed when an action commenced under § 27-2-102, MCA, by stating:

> (1) For purposes of statues relating to the time within which an action must be commenced:
>
> (a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete and a court or other agency is authorized to accept jurisdiction of the action.
>
> . . . .
>
> (2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim of cause of [sic] action, or its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.
>
> As the language of this statute makes clear, the statute of limitations does not begin to run until all elements of a cause of action are in existence. For example, in a negligence action the plaintiff must prove four elements:

6

1) Existence of a duty

2) Breach of the duty

3) Causation

4) Damages.

. . . If these elements are not in existence, the plaintiff could not successfully bring a cause of action based upon negligence. Therefore, although one may be able to establish the existence and breach of a duty, he cannot successfully assert his cause of action until he has sustained an injury . . . . [Citations omitted.]

Kitchen Krafters, 789 P.2d at 571.

Under the Wrongful Discharge From Employment Act, damages do not occur until the employee is no longer earning compensation from the employer, which under the Act is lost wages and fringe benefits, and this can only occur upon a complete severance of the employer-employee relationship.

In this instance, there was not a complete severance of the employer-employee relationship. Respondent continued to work for appellant for another two months, training another individual as a ranch manager. He continued to earn his usual pay and benefits. In addition, appellant signed a pension plan census report stating that respondent's date of termination was October 1, 1988. Respondent's cause of action would not accrue until he stopped earning his salary and benefits. The Wrongful Discharge From Employment Act grants that an employee may be "awarded lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge . . . ." Section 39-2-905(1), MCA. Respondent

7

lost his wages and fringe benefits on October 1, 1988. We hold that the District Court did not err in denying appellant's motion for summary judgment and directed verdict.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

December 8, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Michael P. Sand
Sand Law Offices
502 So. 19th Ave.
Bozeman, MT   59715

Richard A. Nellen and James A. McLean
Drysdale, McLean, Nellen & Nellen
1800 W. Koch, Ste 5
Bozeman, MT  59715


Edmund P. Sedivy, Jr. and David L. Weaver
Morrow, Sedivy & Bennett
P.O. Box 1168
Bozeman, MT  59771-1168


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
      Deputy