No.  96-032

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

THOMAS ARTHUR (ART) CLARK,

        Plaintiff, Appellant and
            Cross-Respondent,

    v.

EAGLE SYSTEMS, INC.; JOHN T. ACKERMAN;
RICHARD B. SCHWEITZER; and RANDAL M. SUNDQUIST,

        Defendants, Respondents and
           Cross-Appellants.

FILED

NOV 20 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               K. D. Peterson; Peterson & Schofield,
               Billings, Montana.

        For Respondents:

               Steven J. Lehman; Crowley, Haughey, Hanson,
               Toole & Dietrich, Billings, Montana

Submitted on Briefs:  July 25, 1996

Decided:  November 20, 1996

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Thomas Arthur Clark (Clark) appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, granting Eagle Systems' (Eagle) motion for summary judgment, concluding that the Wrongful Discharge From Employment Act (the Act) applied and that Clark was terminated for good cause, that Clark failed to state a prima facie case under the Age Discrimination in Employment Act, that Clark could not prevail on his tortious interference with contracts claim, and that the Act is the exclusive remedy and precludes Clark's claim for negligent or intentional infliction of emotional distress. Eagle cross-appeals from the District Court's conclusion that the Act applies to Clark's demotion absent a cessation in employment. We affirm.

We address the following issues on appeal:

1. Did the District Court err in concluding that the Wrongful Discharge from Employment Act applies to demotions that do not result in a cessation of employment?

2. Did the District Court err in granting Eagle's motion for summary judgment on the issue of Clark's claim under the Age Discrimination in Employment Act?

3. Did the District Court err in granting summary judgment in favor of the individually-named defendants on Clark's claim of tortious interference and negligent or intentional infliction of emotional distress?

Clark was employed with Eagle as the terminal manager in Billings, Montana. Eagle contracted with Burlington Northern Railroad (BN) to provide ramp, drayage, and mechanical services for BN at the Billings terminal. In addition, Eagle is responsible for loading and unloading trains in a timely manner.

Clark had been employed in the transportation field since 1955

2

and had served in a variety of positions for previous contractors providing services to the railroad. Clark was hired by Eagle in May of 1985 and continued to serve as terminal manager in Billings until November 21, 1991. On that date, Clark met with Dick Schweitzer (Schweitzer), who was Clark's supervisor, and Schweitzer notified Clark that he was being replaced the next day as terminal manager and was being demoted to the position of utility person. Eagle maintains that Clark was difficult to work with and verbally abusive to both customers and co-workers. Randal Sundquist (Sundquist), who was Clark's subordinate and worked as shop and maintenance supervisor, reported his problems with Clark directly to Schweitzer in the months before Clark's demotion. Several other employees at the Billings terminal stated that they had difficulties with Clark's "paranoia" and harsh discipline.

In May of 1992, Clark filed a complaint with the Montana Human Rights Commission (HRC) alleging that he had been discriminated against based on his age. Eagle removed the case to federal court and, in November of 1993, Clark amended the complaint alleging a cause of action for tortious interference with contract and joining John Ackerman, BN's intermodal hub center manager, Sundquist and Schweitzer as individual defendants. Due to the addition of the Montana defendants, the federal court lost diversity jurisdiction and the matter was remanded to state district court in March of 1994.

On March 31, 1994, the HRC issued a right to sue letter. Accordingly, Clark again amended his complaint alleging a cause of action for age discrimination against Eagle. On October 25, 1995,

3

the District Court granted summary judgment to defendants on all issues. Clark appeals from the grant of summary judgment in favor of the defendants and Eagle cross-appeals from the court's determination that the Act applies absent a cessation in employment.

## Standard of Review

Our standard in reviewing a district court's grant of a motion for summary judgment is *de novo*. Heiat v. Eastern Montana College (1996), 275 Mont. 322, 327, 912 P.2d 787, 790 (citing Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214). That is, we review an order of summary judgment using the same criteria as the district court; we are guided by Rule 56, M.R.Civ.P. Chilberg v. Rose (1995), 273 Mont. 414, 416, 903 P.2d 1377, 1378. Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Heiat, 912 P.2d at 791 (citing Minnie, 849 P.2d at 214). Summary judgment is an extreme remedy and should never be substituted for a trial if a material fact controversy exists. Heiat, 912 P.2d at 791 (citing Howard v. Conlin Furniture No. 2, Inc. (1995), 272 Mont. 433, 436, 901 P.2d 116, 118-19).

A party seeking summary judgment has the burden of establishing a complete absence of any genuine factual issue. Howard, 901 P.2d at 118. In light of the pleadings and the evidence before the district court, there must be no material issue of fact remaining which would entitle a non-moving party to recover. Howard, 901 P.2d at 118. Once the moving party has met its burden, the party opposing the summary judgment motion must

4

present material and substantial evidence, rather than conclusory or speculative statements, to raise a genuine issue of material fact. Howard, 901 P.2d at 119. In addition, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party who opposed summary judgment. Howard, 901 P.2d at 119 (citing Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511).

1. Did the District Court err in concluding that the Wrongful Discharge from Employment Act applies to demotions that do not result in a cessation of employment?

Relying on this Court's recent opinion in Howard, the District Court stated that "the case at bar involves neither a lateral transfer nor a minor change in job description. Plaintiff was also absolutely and finally terminated from his managerial position despite the offer of another, inferior, position." The court concluded that "a jury might conclude that plaintiff's demotion qualified as a discharge within the meaning of the Act." Having determined that the Act did apply, the court went on to conclude that there was good cause for Clark's reclassification and granted Eagle's motion for summary judgment on that basis. In reviewing a district court's conclusions of law, we determine whether the court's interpretation of the law is correct. Stratemeyer v. Lincoln County (Mont. 1996), 915 P.2d 175, 177, 53 St.Rep. 245, 246 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04).

Application of the Act hinges on the existence of a "discharge" or a "constructive discharge." Section 39-2-903, MCA,

5

defines the terms "discharge" and "constructive discharge" as follows:

> (1) "Constructive discharge" means the voluntary *termination of employment* by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative. Constructive discharge does not mean voluntary termination because of an employer's refusal to promote the employee or improve wages, responsibilities, or other terms and conditions of employment.
>
> (2) *"Discharge" includes a constructive discharge as defined in subsection (1) and any other termination of employment*, including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees for a legitimate business reason. [Emphasis added.]

As § 39-2-903, MCA, makes clear, "discharge" includes "constructive discharge" and "any other termination of employment."

In Howard, the plaintiff was terminated from his position as store manager and subsequently offered a position as a sales person at a salary of 75 percent less than his previous salary; Howard did not accept the inferior position. Howard, 901 P.2d at 118. In the instant case, however, Clark was replaced as the terminal manager and immediately reassigned and reclassified as a utility person. Unlike Howard, the record does not reflect whether there was a substantial change in salary or benefits. Clark reported for work the following morning as a utility person and there was no cessation of employment.

In the instant case, Clark does not allege that he was constructively discharged. Furthermore, there has not been a termination of employment within the meaning of the Act. While the District Court correctly stated the rule we recently announced in

6

Howard--that an absolute and final termination from a managerial position followed by the offer of an inferior position may be a termination of employment for purposes of the Act--that rule is inapplicable in the instant case. Here, Clark was never terminated from his employment with Eagle nor did he resign. In fact, he reported to work the following morning and worked as a utility person until several months later when he became disabled and was no longer able to perform his duties.

Section 39-2-904, MCA, requires that there must be a termination of employment before the Act applies. In determining when the statute of limitations begins to run under the Act, this Court stated that termination of employment has been defined to mean "'a complete severance of the relationship of employer and employee by positive act on the part of either or both.'" Allison v. Jumping Horse Ranch (1992), 255 Mont. 410, 412-13, 843 P.2d 753, 755 (quoting Edwards v. Equitable Life Assurance Soc. (Ky. 1944), 177 S.W.2d 574, 577). Further, in Allison, we recognized that "[u]nder [the Act], damages do not occur until the employee is no longer earning compensation from the employer, which under the Act is lost wages and fringe benefits, and this can only occur upon a complete severance of the employer-employee relationship." Allison, 843 P.2d at 756.

In the instant case, there has been no termination--no "complete severance" of the employment relationship. Unlike Howard, there has been no cessation of employment followed by an offer of an inferior position. Under § 39-2-904, MCA, the Act is inapplicable because there was no termination of Clark's employment

7

relationship. Accordingly, we hold that the District Court was incorrect in concluding that Clark's demotion qualified as a discharge under the meaning of the Act.

Although the District Court granted summary judgment for the wrong reasons, it reached the correct result. We affirm district court decisions which are correct regardless of the court's reasoning in reaching the decision. Phillips v. City of Billings (1988), 233 Mont. 249, 252, 758 P.2d 772, 774. Thus, for the reasons set forth above, we affirm the summary judgment for Eagle on Clark's claim for damages under the Wrongful Discharge from Employment Act.

2. Did the District Court err in granting Eagle's motion for summary judgment on the issue of Clark's claim under the Age Discrimination in Employment Act?

In Heiat, 912 P.2d at 793, we announced the standard for analyzing summary judgment motions in the employment discrimination context stating that

> [t]he plaintiff must allege a prima facie case of discrimination in her complaint. In this context, the plaintiff alleges a prima facie case by asserting that plaintiff is a member of a protected class, and that a male colleague with the same credentials, who performs substantially the same work, receives a higher salary. The employer seeking summary judgment must then come forward with a legitimate nondiscriminatory reason for the disparity. If the employer comes forward with a legitimate nondiscriminatory reason, the plaintiff must then, in addition to having alleged a prima facie case in the complaint, produce evidence that establishes her prima facie case as well as evidence which raises an inference that the employer's proffered reason is pretextual.

Here, Clark alleged a prima facie case of age discrimination: (1) that he is in a protected age group; (2) that he performed his

8

job in a satisfactory manner; (3) that he was discharged; and (4) that he was replaced by a substantially younger worker. See Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 854 P.2d 326. Eagle filed a motion for summary judgment on the basis that the record was devoid of any facts showing age to be a factor in Clark's reclassification. Eagle satisfied its burden in moving for summary judgment by presenting a legitimate nondiscriminatory reason for Clark's demotion; that is, he had failed to satisfactorily perform his job duties.

Under Heiat, the burden was on Clark to respond to Eagle's motion for summary judgment by, in addition to having alleged a prima facie case, producing evidence supporting his prima facie case as well as producing evidence raising an inference that the employer's proffered reason was pretextual. Clark failed to meet this burden. He was unable to produce evidence supporting his prima facie case or evidence raising an inference that Eagle's proffered reason (failure to satisfactorily perform) was pretextual.

Although Clark is in a protected age group, he fails to satisfy the additional elements of the prima facie case. As to the second element, there are affidavits and depositions from Clark's supervisors and Eagle employees that he was not performing his job satisfactorily. As to the third element, we have previously determined that Clark was not discharged. Finally, Clark was initially replaced by a 51-year-old man, not a substantially younger worker. Although Clark asserts that his prior management position was eventually filled by a substantially younger worker,

9

he makes no more than conclusory statements to support his allegation that Sundquist's eventual promotion to terminal manager was in any way related to Clark's age. Clark has not presented material and substantial evidence, rather, he has made conclusory or speculative statements. These conclusory and speculative statements do not create a genuine issue of material fact which would preclude the grant of summary judgment. Howard, 901 P.2d at 119.

3. Did the District Court err in granting summary judgment in favor of the individually-named defendants on Clark's claim of tortious interference and negligent or intentional infliction of emotional distress?

In light of our holding that the Act does not apply to a demotion as opposed to a termination, the District Court erred in ruling that Clark's claims for tortious interference and emotional distress were preempted by the Act. Nonetheless, since we have affirmed the District Court's grant of summary judgment on the age discrimination claim, based on Eagle's unrebutted showing that Clark's demotion was attributable to unsatisfactory job performance, logic and consistency dictate that we affirm the summary judgment as to Clark's remaining claims. It would be inconsistent for Clark to attribute blame for his demotion to the individually-named defendants. Accordingly, in keeping with the ruling holding that Clark was responsible for his own demotion, Clark has no claim against the individually-named defendants for infliction of emotional distress or tortious interference with contract. As we stated earlier in the context of the first issue, we affirm district court decisions which are correct regardless of

10

the district court's reasoning in reaching its decision.  <u>Phillips</u>, 758 P.2d at 774.  Although the District Court granted summary judgment on tortious interference and emotional distress for the wrong reasons, the result was correct and is, therefore, affirmed.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Justice Terry N. Trieweiler dissenting.

I concur with the majority's conclusion that the plaintiff did not present substantial evidence that he was discharged from his position as terminal manager because of his age, and that, therefore, the District Court correctly dismissed his claim of age discrimination by summary judgment.

I dissent from the majority's conclusion that Thomas Clark was not terminated from employment, and therefore, had no claim pursuant to Montana's Wrongful Discharge From Employment Act (WDEA) found at §§ 39-2-901 to -915, MCA. Clark was permanently terminated from his position as terminal manager at his employer's Billings facility. He was then offered a totally different job that he had never performed before as a utility person at substantially reduced pay. (When the majority states that "the record does not reflect whether there was a substantial change in salary," they ignore Clark's affidavit.) The mere fact that he took the inferior position simply means that he did everything he could to mitigate his damages. It does not change the fact that he was irreversibly terminated from his employment as the defendant's terminal manager.

This case is indistinguishable in any practical respect from *Howard v. Conlin Furniture No. 2, Inc.* (1995), 272 Mont. 433, 901 P.2d 116. Therefore, I conclude that the application of the WDEA is mandated by that decision, the District Court correctly concluded that it was applicable, and the majority has erred by trying to distinguish

12

this case based on irrelevant factors which make no practical difference.

In *Howard*, the plaintiff was hired as the defendant's store manager in 1990 at an annual salary of $50,000 plus a commission, and was terminated from that position in 1993. *Howard*, 272 Mont. at 435-36, 901 P.2d at 118. At the time of his termination from his managerial position, the plaintiff, like Clark, was offered an inferior position in the same store. He was offered a sales position at a salary of $1000 per month plus a commission opportunity. *Howard*, 272 Mont. at 435-36, 901 P.2d at 118. The District Court dismissed the plaintiff's complaint in *Howard* and we reversed.

On appeal, the employer in *Howard* argued, as the employer in this case argues, that the District Court should be affirmed because the plaintiff had not been discharged from employment, but only demoted. *Howard*, 272 Mont. at 437, 901 P.2d at 119. We set forth the issue on appeal as follows: "The first sub-issue we must decide is whether Howard was discharged, or merely demoted, following which he resigned." *Howard*, 272 Mont. at 438, 901 P.2d at 119.

We held that the following facts were significant to our conclusion that the plaintiff had in fact been discharged from his position as store manager:

> This case does not involve a lateral transfer, nor a minor change in job description. This case involves absolute and final termination from a managerial

13

position, followed by an offer of employment in a functionally different, and substantially inferior, position with the same employer. To hold, as Conlin suggests, that termination of employment in a position that pays over $50,000 per year, and subsequently offering a position which pays less than 25 percent of that amount, is not "a termination of employment" would ignore the plain language of the Act and allow circumvention of the Act's damage provisions which are based on wages at the time of termination. Section 39-2-905, MCA.

Howard was informed that he was being terminated as Conlin's manager. He was then offered a subordinate position among the sales staff he previously managed. His refusal to accept an offer of a lesser position, at best, affects his duty to mitigate his damages. We conclude that when Howard was terminated from his managerial position, he was discharged from employment within the meaning of § 39-2-903(2), MCA, of Montana's Wrongful Discharge From Employment Act.

*Howard*, 272 Mont. at 438, 901 P.2d at 119-20.

There are only two distinctions among the facts in the *Howard* case and those in this case: (1) Clark accepted the inferior position, whereas Howard rejected it; and (2) we knew what the difference in pay was for Howard, while all we know from Clark's affidavit is that his pay was substantially reduced following his termination as terminal manager. However, as we noted in *Howard*, the fact that the employee did or did not take the inferior position simply relates to the issue of mitigation of damages, and whether we know the actual dollar amount by which pay has been reduced, or simply know that pay has been substantially reduced, is a distinction that makes no practical difference.

The majority cites *Allison v. Jumping Horse Ranch, Inc.* (1992), 255 Mont. 410, 412-13, 843 P.2d 753, 755, for the proposition that a

14

discharge requires "a complete severance of the relationship of employer and employee by positive act on the part of either or both." However, *Allison* is inapplicable to the facts in this case. It dealt only with the issue of when the statute of limitations began to run, based on the facts in that case. That case did not involve the termination by the employer of one form of employment and a subsequent offer of substantially inferior employment. Therefore, the majority's reliance on *Allison* is misplaced. *Howard*, on the other hand, is directly on point and factually indistinguishable.

The inference from the majority's decision is that, had Clark turned down the inferior position of utility person, he could have made a claim for constructive discharge pursuant to the WDEA and our decision in *Howard*. However, that suggestion also ignores that plain language of our decision in *Howard*. That decision was not based on our conclusion that by offering the plaintiff an inferior position he was constructively discharged. It was based on our conclusion that when he was finally terminated as store manager, he was "discharged from employment within the meaning of § 39-2-903(2), MCA, of Montana's Wrongful Discharge From Employment Act." *Howard*, 272 Mont. at 438, 901 P.2d at 120.

For these reasons, I conclude that Clark has stated a claim for wrongful discharge pursuant to Montana's Wrongful Discharge From Employment Act, and that the District Court erred when it dismissed that claim by summary judgment. I therefore dissent from

15

that part of the majority opinion which affirms the District Court's dismissal.

Because I conclude that Clark's termination from employment was covered by the Wrongful Discharge From Employment Act, I specially concur with that part of the majority opinion which affirms the District Court's dismissal of Clark's claims for tortious interference and negligent or intentional infliction of emotional distress. For those employees covered by the Wrongful Discharge From Employment Act, common law remedies are preempted pursuant to § 39-2-913, MCA, and pursuant to § 39-2-905(3), MCA, there is no right to recover damages for emotional distress.

_____
                Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
                Justice

16

November 20, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Steven J. Lehman
Crowley, Haughey, Hanson, Toole & Dietrich
Box 2529
Billings MT 59103-2529

K. D. Peterson, Esq.
Peterson and Schofield
2906 Third Avenue North
Billings MT 59102

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy