No. 99-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 101N

AMADO GERRY LOPEZ,

Plaintiff and Appellants,

v.

MUSSELSHELL COUNTY; MUSSELSHELL COUNTY

SHERIFF, G. PAUL SMITH, individually and in his official

capacity; MUSSELSHELL COUNTY ATTORNEY JOHN

BOHLMAN, individually and in his official capacity; and

MUSSELSHELL COUNTY SHERIFF'S DEPUTIES ORVILLE

"BUZZ" JONES; "DUTCH" VAN SYCKEL; WANDA

SPAULDING; and WOODROW "WOODY" WEITZEIL,

individually and in their official capacities,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourteenth Judicial District,

In and for the County of Musselshell,

The Honorable John McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew J. Sisler; Sisler Law Firm, Missoula, Montana

For Respondents:

Steve R. Milch; Crowley, Haughey, Hanson, Toole & Dietrich,

Billings, Montana

James D. Walen; Stacey & Walen, Billings, Montana

Submitted on Briefs: December 9, 1999

Decided: April 20, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

1. ¶2 Amado Lopez (Lopez) appeals from the Order entered by the Fourteenth Judicial District Court, Musselshell County, granting partial summary judgment to the defendants and dismissing several of his claims. We affirm.
2. ¶3 We rephrase the issues on appeal as follows:
3. ¶4 1. Did the District Court err in granting summary judgment to the defendant law enforcement agents and dismissing all 42 U.S.C. § 1983 claims against them related

to the alleged unlawful arrest and false imprisonment of Lopez?

¶5 2. Did the District Court err in granting summary judgment to John Bohlman in his official capacity and dismissing all claims against him arising out of his prosecutorial function as the Musselshell County Attorney?

¶6 3. Did the District Court err in granting summary judgment to John Bohlman and dismissing all claims against him related to his role in assisting law enforcement agents in arresting Lopez?

¶7 4. Did the District Court err in granting partial summary judgment to the defendants on Lopez's conspiracy claims?

¶8 5. Did the District Court err in awarding the defendants costs?

## *BACKGROUND*

¶9 In early 1995, law enforcement personnel in Musselshell County began receiving threats of bodily harm from Rodney Skurdal (Skurdal), a so-called "Freeman" who resided in a cabin south of Roundup, Montana. On February 22, 1995, FBI Special Agent Tommie Canady informed Musselshell County Sheriff G. Paul Smith that a "reliable source" told him an individual named Jacobi and others were planning to "kidnap and lynch a judge in Musselshell County." Sheriff Smith disseminated that information to his deputies, hired reserve deputies and placed law enforcement in Musselshell County on "heightened security." Sheriff Smith also increased security in the courthouse and assigned deputies to protect Judge Roy Rodeghiero and escort him to and from his residence.

¶10 At approximately 4:00 p.m. on March 3, 1995, Reserve Deputy Mike Thomas observed a man in the Musselshell County Courthouse whom he believed was performing reconnaissance prior to a possible kidnaping. Deputy Thomas described the individual and what he observed to Deputy Orville Jones and stated that the individual left the courthouse, got into a white flat-bed truck with dual tires with another individual and drove south on Main Street.

¶11 Deputy Jones located the flat-bed truck on Main Street and noticed it had no rear license plate. He stopped the vehicle and identified the driver as Dale Jacobi (Jacobi), who did not have a driver's license. Jacobi was arrested for no driver's license, no current registration, and no proof of liability insurance.

¶12 Deputy Jones conducted a pat-down search of Jacobi and discovered a revolver. The passenger in the vehicle, Frank Ellena (Ellena), met the description of the person Deputy Thomas had observed in the courthouse. Deputy Jones discovered Ellena was in possession of a pistol and arrested both men for carrying concealed

weapons. Jacobi and Ellena also had a two-way radio in the vehicle.

5. ¶13 Jacobi and Ellena were taken to the sheriff's office, booked and incarcerated. Since Jacobi and Ellena were armed and possessed a two-way radio, Sheriff Smith and his deputies believed there could be other people in other vehicles involved in a possible attempt to kidnap Judge Rodeghiero.

6. ¶14 A search of Jacobi's flat-bed truck located several weapons and ammunition, including four SKS assault rifles and two bandoliers of ammunition. A bundle of flex-cuffs, pepper spray, duct tape and sophisticated radio communication equipment also were recovered from the vehicle. Deputy Jones called Musselshell County Attorney John Bohlman (Bohlman), explained the situation and asked him to come to the sheriff's office and determine the charges to be filed against Jacobi and Ellena.

7. ¶15 Cajun James (James), Paul Stramer (Stramer) and Lopez witnessed Jacobi and Ellena's arrests. Stramer called John Trochmann (Trochmann) at the Skurdal cabin and informed him of the arrests. Stramer, James and Lopez then returned to the cabin.

8. ¶16 Trochmann, Mark Basque (Basque), James, Stramer and Lopez subsequently "left [the cabin] to go look for Dale Jacobi and Frank Ellena." At approximately 6:00 p.m., deputies saw two vehicles containing five men park at opposite ends of the sheriff's office parking lot in what appeared to be an effort to block the entrance. One vehicle was backed into a parking space in what Deputy "Dutch" Van Syckel thought was preparation for a quick get-away. Deputy Van Syckel also observed at least one person talking on a handheld radio.

9. ¶17 James, Stramer and Lopez exited the vehicles and entered the sheriff's office. Prior to doing so, Stramer removed his pistol from his holster and left it in his truck. James entered the sheriff's office carrying a pistol in a holster.

10. ¶18 Inside, the three men requested the return of their personal property and, specifically, the two-way radio seized from Jacobi and Ellena. They also asked Deputy Van Syckel, through the security window, why Jacobi and Ellena had been arrested. The deputy saw Stramer's holster protruding beneath his jacket and shouted "I see a gun." James then revealed the pistol in his holster and Deputy Van Syckel shouted "I see another gun."

11. ¶19 At that point, Deputy Jones burst through the door separating the officers from James, Stramer and Lopez with a shotgun and Deputy Van Syckel followed with his handgun drawn. James, Stramer and Lopez were arrested, handcuffed and placed on the floor.

12. ¶20 While Deputy Wanda Spaulding guarded the three men, Deputies Jones and

Van Syckel investigated Trochmann and Basque who were waiting outside. Deputies Jones and Van Syckel subsequently arrested Trochmann and Basque and placed them face down on the floor of the sheriff's office with James, Stramer and Lopez.

13. ¶21 Bohlman had arrived at the sheriff's office before the two vehicles. When the two vehicles arrived in the parking lot, Deputy Jones handed Bohlman his handgun and Bohlman remained in an interior office of the building. Bohlman came out of the office after the five men were lying on the floor; Deputy Jones took his handgun back and gave Bohlman the shotgun. Deputy Spaulding and Bohlman were instructed to "cover" the men while Deputies Jones, Van Syckel and Woodrow Weitzeil searched them and escorted them to a holding cell.

14. ¶22 Information regarding the arrests was submitted to Bohlman and the Montana Attorney General's Office to determine the appropriate charges. The State of Montana (State) subsequently charged James, Stramer and Lopez with criminal syndicalism, intimidation, and tampering with evidence. Trochmann and Basque were charged with criminal syndicalism, intimidation by accountability, and attempted tampering with evidence. John Connor, Jr., of the Attorney General's Prosecution Services Bureau, took over the case and dismissed the charges after further investigation based on his decision that they could not be proved beyond a reasonable doubt.

15. ¶23 Lopez and others subsequently sued Musselshell County, Sheriff Smith, Deputies Jones, Van Syckel, Spaulding and Weitzeil, and Bohlman under 42 U.S.C. § 1983, and for various tort claims relating to the men's arrests. As amended, their complaint set forth five causes of action which are discussed as necessary below.

16. ¶24 Musselshell County, the defendant law enforcement agents--Sheriff Smith and Deputies Jones, Van Syckel, Spaulding and Weitzeil--and Bohlman subsequently moved for summary judgment and the District Court entered its order granting summary judgment in part and denying it in part. Lopez's remaining claims proceeded to trial and the jury found in the defendants' favor. Lopez appeals.

## STANDARD OF REVIEW

1. ¶25 We review a district court's ruling on a motion for summary judgment *de novo*, using the same Rule 56(c), M.R.Civ.P., criteria applied by the district court. *Clark v. Eagle Systems, Inc.* (1996), 279 Mont. 279, 283, 927 P.2d 995, 997 (citations omitted). Under Rule 56(c), M.R.Civ.P., summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as

a matter of law.

2. ¶26 The moving party has the initial burden of demonstrating the absence of genuine issues of material fact. *Clark*, 279 Mont. at 283, 927 P.2d at 997 (citation omitted). If this burden is satisfied, the party opposing summary judgment must present material and substantial evidence, rather than conclusory or speculative statements, to demonstrate that a genuine issue of material fact exists. *Clark*, 279 Mont. at 283, 927 P.2d at 998 (citation omitted). We review a district court's conclusions of law to determine whether they are correct. *Clark*, 279 Mont. at 284, 927 P.2d at 998 (citations omitted).

## *DISCUSSION*

1. ¶27 **1. Did the District Court err in granting summary judgment to the defendant law enforcement agents and dismissing all § 1983 claims against them related to the alleged unlawful arrest and false imprisonment of Lopez?**

1. ¶The District Court concluded, on the basis of the undisputed facts, that the defendant law enforcement agents had probable cause to arrest and detain Lopez, rather than a mere suspicion of criminal activity. It expressly determined that "these trained officers had facts and circumstances sufficient to warrant a reasonable person to believe an offense or offenses were being committed. One of the offenses reasonably believed committed included conspiracy or the planning to kidnap and perhaps kill a judge."

2. ¶A peace officer may arrest a person without a warrant if probable cause exists to believe the person is committing, or has committed, an offense and existing circumstances require immediate arrest. Section 46-6-311(1), MCA.

[P]robable cause is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that another person is committing or has committed an offense. A probable cause determination must be based on an assessment of all relevant circumstances, evaluated in light of the knowledge of a trained law enforcement officer. Mere suspicion on the officer's part is not enough to establish probable cause to believe a person has committed an offense.

*State v. Williamson, 1998 MT 199, ¶ 21, 290 Mont. 321, ¶ 21, 965 P.2d 231, ¶ 21 (citations omitted).*

*Moreover, if probable cause existed for Lopez's arrest, it is "an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." See Schertz v. Waupaca County (7th Cir. 1989), 875 F.2d 578, 582.*

1. ¶In support of their summary judgment motion, the defendant law enforcement agents submitted the following deposition testimony which they contended established the absence of genuine issues of material fact relating to probable cause to arrest Lopez. Agent Canady informed Sheriff Smith of a tip from a reliable source that someone named Jacobi and others were planning to "kidnap and lynch a judge in Musselshell County." In response, Sheriff Smith hired reserve officers, placed his department on heightened security, increased security at the courthouse and assigned deputies to escort Judge Rodeghiero to and from his home.

2. ¶Jacobi and Ellena were arrested--in possession of SKS assault rifles, ammunition, flex-cuffs, pepper spray and sophisticated radio equipment--after conducting what appeared to Deputy Thomas to be a reconnaissance of the courthouse. Shortly thereafter, telephone inquiries about the arrests began.

3. ¶Within two hours, two vehicles--containing five men--arrived and parked at opposite ends of the sheriff's office parking lot. One was backed into a parking space in what Deputy Van Syckel believed to be "preparation for a quick get-away." James, Stramer and Lopez entered the sheriff's office, requested the return of a radio seized from Jacobi and Ellena and asked why the arrests had been made. Deputy Van Syckel saw the bottom of a holster protruding from one of their jackets and a .45 semi-automatic pistol in a holster worn by another. At this point, Deputies Jones and Van Syckel arrested James, Stramer and Lopez.

4. ¶Based on this testimony, we conclude the defendant law enforcement agents established the absence of genuine issues of material fact relating to probable cause to arrest Lopez. The information within their personal knowledge and relayed by a reliable source constituted sufficient facts and circumstances to lead a reasonable person to believe an offense, such as conspiracy to kidnap or kill a judge, was being committed. *See* § 46-6-311(1), MCA; *Williamson*, at ¶ 21.

5. ¶Lopez contends, however, that Agent Canady and Sheriff Smith's testimony regarding the tip from a reliable source that a plan was afoot to "kidnap and lynch a judge in Musselshell County" was lacking in documentation. He urges this lack of documentation creates a factual issue as to whether or not the defendant law enforcement agents had knowledge of the tip. His reliance is misplaced.

6. ¶Agent Canady and Sheriff Smith's sworn testimonies are sufficient to establish the absence of an issue of fact relating to the tip. The burden then shifted to Lopez to come forward with material and substantial evidence, rather than conclusory or

speculative statements, to demonstrate that a genuine issue of material fact exists. *See Clark*, 279 Mont. at 283, 927 P.2d at 998 (citation omitted). He failed to do so. While Lopez indicates written evidence or phone records "would substantiate (or not)" Agent Canady's testimony regarding the tip, it was his burden to produce such evidence.

7. ¶Lopez also argues that, since he was not carrying a weapon and all charges against him ultimately were dismissed, he committed no offense. Accordingly, he contends the defendant law enforcement agents mistakenly assumed and speculated about his involvement and this is an insufficient basis for probable cause. However, the existence of probable cause to arrest is premised on circumstances as they exist at the time, not matters determined subsequent to that time. *See, e.g.,* § 46-6-311(1), MCA; *Williamson*, at ¶ 21. Probable cause to arrest, once it exists, is not "undone" by later events. *See State v. Kelly* (1983), 205 Mont. 417, 431, 668 P.2d 1032, 1040.

8. ¶Lopez having failed to establish a genuine issue of material fact regarding probable cause, the probable cause barred § 1983 claims for unlawful arrest and false imprisonment. *See Schertz*, 875 P.2d at 582. We hold, therefore, that the District Court did not err in granting summary judgment to the defendant law enforcement agents and dismissing Lopez's § 1983 claims based on unlawful arrest and false imprisonment.

9. **¶2. Did the District Court err in granting summary judgment to Bohlman in his official capacity and dismissing all claims against him arising out of his prosecutorial function?**

1. ¶The District Court granted partial summary judgment to Bohlman and dismissed Lopez's claims arising out of Bohlman's prosecutorial function as the Musselshell County Attorney based on prosecutorial immunity. On appeal, Lopez asserts error only as to the court's application of the doctrine of prosecutorial immunity to his claims against Bohlman in Bohlman's official--not individual--capacity. He cites to two cases for the proposition that immunities such as prosecutorial immunity are personal to the individual and, therefore, can be applied only to claims against a person in her or his individual capacity and not to official capacity claims which are, in essence, claims against the employing governmental units.

2. ¶The problem with Lopez's argument is that, as the defendants point out, he did not present it in the District Court. There, Lopez's one-paragraph response to Bohlman's contention that he was entitled to prosecutorial immunity was simply that Bohlman's "request is without merit." No legal authorities or analyses whatsoever were

presented on the subject of prosecutorial immunity. Nor did Lopez assert any distinction regarding application of the doctrine insofar as individual or official capacity claims were concerned.

3. ¶We generally do not consider an issue presented for the first time on appeal because "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citation omitted). Having failed to raise the issue of whether prosecutorial immunity applies to his official capacity claims against Bohlman in the District Court, Lopez waived his right to raise it on appeal.

4. ¶We hold that the District Court properly granted summary judgment to Bohlman and dismissed all claims against him arising out of his prosecutorial function as the Musselshell County Attorney.

5. **¶3. Did the District Court err in granting summary judgment to Bohlman and dismissing all claims related to his role in assisting law enforcement agents in arresting Lopez?**

1. ¶The District Court granted Bohlman summary judgment and dismissed Lopez's claims for excessive use of force in assisting the defendant law enforcement agents in arresting Lopez. The court explained

the undisputed facts are that . . . at the direction of the law enforcement officers, Bohlman guarded the three Plaintiffs on the floor of the Sheriff's Department briefly while Deputies Jones and Van Syckel went to investigate the two men waiting outside in the vehicle. In the course of guarding these Plaintiffs, [Bohlman] may have pointed [a weapon] at Plaintiffs. In light of the probable cause to arrest for commission of a conspiracy offense and with other men waiting outside, such use of force, without more, is entirely reasonable. Plaintiffs failed to present any facts to show additional actions by [Bohlman] during their arrest. As a matter of law, [Bohlman] did not use excessive force in the arrest of Plaintiffs. *See Courson v. McMillian*, 939 F.2d 1479, 1493 (11th Cir. 1991).

The District Court also dismissed Lopez's tort claims against Bohlman relating to Bohlman's actions in assisting the deputies based on the immunity set forth in § 46-6-402 (2)(b), MCA.

1. ¶Lopez primarily contends that Bohlman is not entitled to prosecutorial immunity for his role in Lopez's arrest. As set forth above, however, the District Court did not grant summary judgment on these claims on the basis of prosecutorial immunity.

2. ¶Lopez also argues Bohlman was not justified in pointing a loaded firearm at his head. In this regard, he contends Bohlman was engaged in a conspiracy to deprive him of his constitutional right to due process of law, probable cause to arrest was lacking and, in any event, Bohlman's action was unreasonable.

3. ¶Claims for excessive use of force in the course of an arrest are analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor* (1989), 490 U. S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456 (citation omitted).

4. ¶We need not reiterate the facts set forth above which were sufficient to establish probable cause to believe that Lopez was involved in a conspiracy to kidnap or kill a judge and which set the stage for Bohlman's actions of "covering" or even pointing a weapon at Lopez. In light of those facts and the circumstances facing Bohlman, his actions were objectively reasonable.

5. ¶Moreover, a peace officer making a lawful arrest may command the aid of other persons and, in such an event, the person "is not civilly liable for any reasonable conduct in aid of the officer." Sections 46-6-402(1) and (2)(b), MCA. In this case, Deputy Jones gave Bohlman a weapon and directed him to cover the suspects while they were searched and placed in a holding cell. Bohlman's conduct in aiding the deputy at the deputy's direction was reasonable under the circumstances. Therefore, the District Court did not err in concluding that Bohlman is immune from civil liability pursuant to § 46-6-402(2)(b), MCA.

6. ¶We hold the District Court properly granted summary judgment to Bohlman and dismissed all claims related to his role in assisting law enforcement agents in arresting Lopez.

7. **¶4. Did the District Court err in granting partial summary judgment to the defendants on Lopez's conspiracy claims?**

1. ¶The defendants moved for summary judgment on, and dismissal of, all the conspiracy claims against them. They relied on the determination by the Seventh Circuit Court of Appeals in *Kunik v. Racine County* (7th Cir. 1991), 946 F.2d 1574,

1580 (citation omitted), that "[a] complaint inadequately alleges conspiracy when the facts it alleges are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy."

2. ¶The District Court made findings regarding Lopez's conspiracy claims and concluded that only one was supported by allegations which were not "merely conclusory and too vague." Accordingly, it dismissed all but one of Lopez's conspiracy claims.

3. ¶Lopez asserts the court erred in precluding him from presenting his claim of a conspiracy to violate his Fourth Amendment and due process rights. In this regard, he contends probable cause did not exist for his arrest and, as a result, he was inappropriately detained. Having determined above that probable cause existed for the arrest, we need not address this contention further.

4. ¶We hold the District Court properly granted partial summary judgment to the defendants on Lopez's conspiracy claims.

5. **¶5. Did the District Court err in awarding the defendants costs?**

1. ¶After a trial on Lopez's remaining claims, the jury returned a verdict on April 27, 1999, in the defendants' favor. The defendants filed and served a memorandum of costs and disbursements two days later and Lopez objected to the costs on May 10, 1999. The District Court subsequently awarded the defendants their costs.

2. ¶Lopez contends that the defendants defended against the claims of six plaintiffs in this case and that the case was intertwined with a related action by Trochmann. We need not address Lopez's contention, however, because the record is clear that his objections to costs were not timely filed under § 25-20-502, MCA. Accordingly, Lopez waived his right to object to the defendants' claimed costs.

3. ¶We hold the District Court did not err in awarding the defendants costs.

4. ¶Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART